Dennis R. ELY, Plaintiff,

v.

Marshall E. HONAKER et al.,
Defendants.

Civ. A. No. 770051–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Nov. 28, 1977.

W. H. Robinson, Abingdon, Va., for plaintiff.

Robert W. Detrick, City Atty., Bristol, Va., George M. Warren, Jr., Commonwealth's Atty., Bristol, Va., J. D. Bowie, Warren, Bowie & Bressler, James P. Jones, Penn, Stuart, Eskridge & Jones, Ralph M. Dillow, Jr., Bristol, Va., for defendants.

### MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff has brought this action alleging that his dismissal as police officer for the City of Bristol, Virginia, was in violation of certain rights protected under the Constitution and laws of the United States. The plaintiff, Dennis R. Ely, was hired as a Bristol City police officer on December 10, 1973. On December 3, 1976, the City Sheriff of Bristol, Marshall E. Honaker, filed a written complaint with Bristol City Police Chief Jack Stigall concerning the conduct of plaintiff. After an investigation, Stigall made a recommendation for Ely's permanent dismissal to the City Manager of Bristol, Hugh Cooper. By notation dated December 20, 1976, City Manager Cooper approved the recommendation. Plaintiff was relieved of duty the same day. On January 28, 1977, Ely filed an action in U.S. District Court seeking injunctive relief and monetary damages.

At an initial hearing on the application for injunctive relief, this court suggested that the controversy might be resolved through the City of Bristol's grievance mechanism. All parties agreed to submit the matter to a grievance panel, in accordance with the Bristol City Grievance Procedure. A three member panel was subsequently appointed by the Bristol City Council. A hearing was conducted on April 1,

1977. The panel issued a written decision on April 5, 1977. The panel unanimously concluded that Ely's dismissal was proper and justified for good cause shown. As provided under the Bristol City Grievance Procedure, Ely requested City Council to review the panel's determination. By letter dated July 13, 1977, City Council advised Ely that the panel's decision was affirmed.

Subsequently, Ely resubmitted the case to this court on a motion for leave to amend the original complaint. Leave to amend was granted. In the amended complaint, plaintiff now charges that certain Bristol city officials, operating under color of state law, acted and conspired in a manner so as to deprive plaintiff of certain constitutional rights. The action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1985. Jurisdiction is further asserted under 28 U.S.C. § 1343. Plaintiff specifically alleges deprivation of rights protected under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The named defendants now include the City Manager, Hugh Cooper; City Sheriff Marshal Honaker; Police Chief Jack Stigall; City Mayor R. L. Light; and City Council members John Brown, H. L. Littleton, John Stover and Richard Gordon. The case is currently before the court for consideration of defendants' motion for summary judgment.

## STATEMENT OF UNCONTESTED FACTS

The course of events that led to plaintiff's dismissal was initiated by the complaint of City Sheriff Honaker to Police Chief Stigall. In the complaint, Honaker alleged that several employees in his department had reported harassment by officer Ely over a period of several months. All parties agree that plaintiff had undertaken an investigation of an alleged prostitution ring thought by Ely to be operating in the City of Bristol.[1] Apparently, Ely believed that a female employee in the Sheriff's Department was involved in the prostitution ring.[2] In his complaint, Sheriff Honaker further alleged that Ely had discussed the investigation of prostitution with a reporter of a local television station.

Police Chief Stigall subsequently provided Ely with a copy of Honaker's complaint and ordered Ely to respond thereto within ten working days. Stigall's action was consistent with the Bristol City Grievance Procedure.[3] Thereafter, a controversy developed between Stigall and Ely's attorney regarding access to information and evidence to which Honaker made reference in the initial complaint.[4] Ely was apparently advised by counsel not to respond to the complaint until such access had been granted. During the same period, Stigall directed one of his own ranking officers to investigate the circumstances described in Honaker's complaint. After the investigation was completed and upon Ely's refusal to make timely response to the complaint, Stigall recommended Ely's dismissal to the City Manager. In the recommendation, Stigall stated that he believed Honaker's charges to be well founded. Stigall further stated that he had determined Ely's conduct to be "detrimental to the good order, efficiency, and morale of the department".

1. The affidavits presented in support of the respective parties' positions create a question as to whether Ely's investigation was authorized or approved by his superiors. However, for reasons stated *infra*, the court is of the opinion that the question of authorization is immaterial to the resolution of the instant motion for summary judgment.

2. For reasons stated *infra*, the court is of the opinion that the validity of Officer Ely's beliefs is totally irrelevant for purposes of this case.

3. Step I of the Bristol Grievance Procedure provides, *inter alia*, as follows:

> An employee who has a grievance shall discuss the problem with his immediate supervisor within ten work days after the event giving rise to the grievance or within ten work days following the time when the employee reasonably should have known of its occurrence . . . .

4. In his complaint to Stigall, Honaker had noted that his complaining employees were preparing statements describing the particulars of the purported harassment. Moreover, it seems that the television reporter had presented Honaker with a tape of a telephonic conversation between the reporter and Ely. These items were of particular interest to Ely's attorney.

Prior to grievance hearing held at the suggestion of this court, Ely was provided access to all relevant documents.[5] Furthermore, extensive testimony from the principals was developed at the hearing. In its written decision, the grievance panel determined that the dismissal was justified. The panel specifically determined (1) that Ely had unduly harassed one Barbara Newton, an employee of the Sheriff's department, and (2) that Ely improperly discussed an ongoing criminal investigation with one Pat Mead, a local television reporter.

## PLAINTIFF'S THEORIES OF ACTION

The substance of plaintiff's complaint, as amended, can be reduced into three separate contentions. Plaintiff alleges that Police Chief Stigall's initial refusal to provide relevant documents to plaintiff's attorney amounted to deprivation of right to counsel as protected under the Sixth Amendment. Secondly, plaintiff urges that his dismissal was in violation of safeguards protected under the Due Process clause of the Fifth and Fourteenth Amendments. Finally, plaintiff notes that the grievance panel found his conversation with a news reporter to be sufficient grounds for dismissal. Plaintiff now asserts that he was dismissed in retribution for exercise of his First Amendment guarantee of freedom of speech.

## RIGHT TO COUNSEL

▮ Plaintiff's Sixth Amendment claim is of little moment and need not long detain the court. This court is unaware of any authority supportive of the proposition that the right to legal representation attaches to state administrative proceedings. Moreover, in point of fact, the record in the instant case reveals that plaintiff was ably represented by counsel at all times following the filing of Sheriff Honaker's complaint. The court finds plaintiff's Sixth

Amendment contentions to be without merit as a matter of law. By refusing plaintiff's attorney access to the evidence in the initial grievance stage, Police Chief Stigall did not create a cause of action under the Sixth Amendment. At most, plaintiff's arguments in this regard present a due process question which will be considered accordingly.

## DUE PROCESS

▮ In order to maintain an action under the Due Process clause, a discharged public employee must demonstrate that he has been deprived of a legitimate "property" or "liberty" interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Such "property" interests often arise out of contractual arrangements. However, plaintiff does not allege that he had an employment contract with the City of Bristol such as would prohibit termination of employment. Moreover, there is no allegation that plaintiff had qualified for any vested rights due to the length of his service. In the alternative, plaintiff alleges that he was denied benefit of local procedural and personnel rules which would have served to protect his employment status. If such a situation did in fact prevail, plaintiff would have demonstrated a legitimate "property" interest subject to constitutional protection. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

▮ At the outset, the court notes that the record in this case presents some question as to whether plaintiff waived benefit of the local procedural rules when he failed to comply with the provisions of Step I of the grievance mechanism. Plaintiff alleges that his failure to comply was premised on what he perceived to be procedural deficiency in Step I of the grievance structure.[6]

---

5. Ely contends that several items were withheld. However, the record reveals that when the existence and relevance of these documents became evident at the grievance hearing, they were produced. Ely also contends that the tape of his telephonic conversation with the newspaper reporter contained numerous "gaps".

6. It would seem that Police Chief Stigall, plaintiff's ultimate supervisor in the police department, interpreted Step I of the grievance proce-

However, plaintiff's perceptions in this regard are of no consequence. As the Supreme Court stated in *Arnett v. Kennedy, supra,* "the property interest which [an employee] had in his employment was itself conditioned by the procedural limitations which accompanied that grant of interest". 416 U.S. at 155, 94 S.Ct. at 1645. In short, had there been no grievance mechanism, plaintiff would have been subject to discharge at any time, with or without cause. See *Prince v. Bridges,* 537 F.2d 1269, 1271–1272 (4th Cir.).

██ Despite plaintiff's apparent waiver of his procedural safeguards, the defendants, representing the City of Bristol, consented to the conduct of a full confrontation hearing. At the hearing, all relevant documentary evidence was considered and plaintiff was given full opportunity to summons and cross-examine witnesses. As provided under Section IV of the City of Bristol Grievance Procedure, the hearing panel considered the case *de novo.* Plaintiff was provided full opportunity to refute the charges and to clear his standing as a professional. Even when viewing plaintiff's allegations in the most favorable light, the court can discern absolutely no indication that the hearing was procedurally unsound.[7] Since plaintiff was afforded full protection of the procedural rules upon which his continued employment was conditioned, the court concludes that the allegations of due process infringement are without merit as a matter of law.

## FREEDOM OF SPEECH

██ Plaintiff alleges that he was dismissed in retribution for exercise of his freedom of speech as guaranteed under the First and Fourteenth Amendments. Clearly, a governmental employee does not surrender his constitutional right of freedom of speech simply by virtue of his employment status. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 269, 33 L.Ed.2d 570 (1972). However, it is equally clear that an employee cannot indiscriminately invoke his First Amendment freedom, as a bar to discharge for cause, when his utterances become disruptive of his own work and injurious to the efficiency of his employment unit. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Jenson v. Olson,* 353 F.2d 825 (8th Cir., 1965). In *Pickering v. Board of Education, supra,* the United States Supreme Court recognized that the proper analysis in such a situation requires a comparison of respective interests. In upholding Pickering's right as a teacher to make public certain criticisms of his local school board, the Supreme Court commented as follows:

> The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. 391 U.S. at 568, 88 S.Ct. at 1734.

This court is highly cognizant of the essential role that freedom of speech plays in our American society. It is no small matter when a court is asked to rule against such freedom of expression on a motion for summary judgment. Obviously, any court

---

dure to be an informal stage, designed to promote resolution of conflicts on an intra-departmental basis. This interpretation is consistent with Section III of the City of Bristol Grievance Procedure. The court is unaware of any authority, under either state or federal law, which suggests that an employee is entitled to full confrontation rights at the preliminary grievance stage. Plaintiff would have waived no rights by simply denying Honaker's complaint and proceeding on to the confrontation stages of the grievance mechanism.

7. Plaintiff advances a number of contentions to the effect that the grievance panel's hearing was totally unfair and biased. For example, plaintiff asserts that the panel ignored the significance of the "gaps" in the taped conversation between himself and the television reporter. However, the grievance panel indicated in its written decision that it found the fact of Ely's conversation with the reporter, rather than the substance of the conversation, to be the crucial factor. Plaintiff is not entitled to relief simply because he disagrees with the grievance panel's findings.

treads a fine line when applying the balancing test enunciated in *Pickering*. In so many cases of this nature, the comparison of competing interests reveals the scales to be closely balanced. However, the court is simply unable to conclude that such a situation prevails in the instant case.

In undertaking the relevant inquiry, the court construes, as it must, all reasonable inferences in a light most favorable to plaintiff. For purposes of the ensuing discussion, those inferences may be summarized as follows:

1. Plaintiff's immediate supervisors had knowledge of plaintiff's investigation of prostitution and, by withholding of objection, lent at least tacit approval to its conduct.
2. Plaintiff's beliefs had some substance.
3. Revelation of a prostitution ring might have proved embarrassing to prominent citizens.
4. The taped conversation between plaintiff and the television reporter was purposefully altered by some unknown person.
5. Plaintiff would not have been terminated but for his conversation with the television reporter.

Several other facts are undisputed and are worthy of restatement. Plaintiff admits that he discussed his investigation with the television reporter.[8] At the grievance hearing, Police Chief Stigall offered unrebutted testimony indicating that plaintiff was required, as an officer, to be familiar with the local police department rules of procedure. Such rules, as described by Stigall, strictly limit release of information to members of the press.[9] Finally, plaintiff makes no argument that the public interest was best served by revelation of the substance of his

investigation at a time prior to the initiation of formal criminal proceedings.

The court must agree that plaintiff's conversation with the television reporter created sufficient cause for plaintiff's dismissal. Plaintiff's decision to engage in the conversation can only be viewed to have been occasioned by an exercise of poor discretion, both for personal and professional reasons. Given the television reporter's unusual conception of his role as a journalist, plaintiff obviously made a poor personal choice of confidant. In the professional sense, the court can conceive of absolutely no justification for discussion by a police officer of an ongoing criminal investigation with an individual not associated with the department. In this context, investigation must be distinguished from speculation. Asking questions is one matter. Describing the status of an investigation and drawing inferences therefrom is another. A police department could scarcely perform in an efficient and productive manner if its individual officers were at liberty to freely discuss specific persons and matters under investigation with members of the public at large. Aside from the obvious tort considerations, the potential for abuse is abundant. The court is simply unable to conclude that the First Amendment must be interpreted so as to protect an individual police officer's publication of substantive elements of a pending criminal investigation.

The court has assumed that the grievance panel would have reinstated Ely but for the conversation with the television reporter.[10] However, the court must determine that plaintiff's interest, as a citizen, in publicizing the details of his pending crimi-

---

8. At the grievance hearing, plaintiff testified that he asked the reporter if he was interested in a "big story" concerning "suspected prostitution". (TR 361). Subsequently, plaintiff discussed the substance of the investigation in a telephonic conversation initiated by the reporter. (TR 208–237).

9. TR 185–188.

10. Plaintiff relies heavily on the recent Supreme Court decision in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). However, the decision in *Doyle* speaks only to the requirements of causation once it is established that the communication was in fact protected. Inasmuch as the court has determined that the communication in the instant case was not protected, the causation question is irrelevant.

nal investigation was minimal if not non-existent. Moreover, such publication could clearly have been expected to prove detrimental to the efficient operation of the Bristol Police Department, had not Ely's supervisor made proper response. Given such circumstances, the court must conclude that the communication in question was not constitutionally protected. *Pickering v. Board of Education, supra.* The court finds plaintiff's allegation of infringement of the right to freedom of speech, as protected under the First and Fourteenth Amendments, to be without merit as a matter of law.

## SUMMARY AND DISPOSITION

The record in this case conclusively establishes that plaintiff's dismissal was not occasioned by deprivation of any rights secured under the Constitution and laws of the United States. Plaintiff was provided full access to the safeguards established under the City of Bristol Grievance Procedure. His grievance hearing was procedurally sound. The grievance panel upheld plaintiff's dismissal, finding, *inter alia,* that plaintiff made improper communication regarding a matter under criminal investigation. Such utterances are not subject to constitutional protection. Plaintiff has failed to allege any circumstances which would indicate a conspiracy designed to deprive him of his civil rights. The court must conclude that all contentions of plaintiff's complaint are without merit as a matter of law. Accordingly, summary judgment will be entered in favor of the defendants with each party to bear his own costs.