**David E. COOPER, Appellant,**

v.

**Ralph M. JOHNSON, Jr., Appellee.**

**No. 77–2481.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 16, 1978.

Decided Jan. 15, 1979.

---

John D. Grad, Alexandria, Va. (Hirschkop & Grad, P. C., Gregory E. Stambaugh, Alexandria, Va., on brief), for appellant.

William H. Harris, Fredericksburg, Va., for appellee.

* Honorable Walter E. Hoffman, Senior District Judge for the Eastern District of Virginia, Sitting by Designation.

1. *See Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The court instructed on the three-part test of *Mt. Healthy*: whether the conduct plaintiff claims to be protected is, in fact, entitled to constitutional protection; whether that

Before WIDENER and HALL, Circuit Judges, and HOFFMAN *, Senior District Judge.

K. K. HALL, Circuit Judge:

David E. Cooper, formerly a deputy sheriff in Spotsylvania County, Virginia, filed suit under 42 U.S.C. § 1983 against his employer, Sheriff Ralph M. Johnson, Jr., alleging that he had been dismissed from his job for exercising his constitutional right to speak on an issue of public concern. At the close of the evidence the district court instructed the jury that it was to determine, *inter alia*, whether Cooper's speech, contained in a proposed letter to the editor of a local newspaper, was entitled to constitutional protection.[1] The jury returned a verdict for Cooper. After post-trial motions the court set aside the jury verdict and entered judgment for defendant Johnson, holding that the question of whether Cooper's speech was constitutionally protected was one for resolution by the court rather than the jury, and then determining that the speech was not in fact protected. Although we find it unnecessary to determine the correctness of the former ruling, we agree that the latter finding is beyond dispute and accordingly affirm.

Sheriff Johnson, who had been Chief Deputy under Sheriff B. W. Davis, defeated Davis in November, 1975, after a heated election in which Cooper had endorsed and campaigned for Davis. Cooper and most of the other Davis deputies were re-appointed by Johnson, but Johnson made certain organizational changes, in part by appointing Thomas Mills to the position of Inspector. The evidence, while conflicting as to degree

protected conduct was, in fact, a motivating or substantial factor in the decision to discharge plaintiff; and whether the plaintiff would have been discharged in the absence of the protected conduct. The court withheld from the jury the second issue, finding .that Sheriff Johnson's own testimony conclusively established this fact.

of animosity, shows that Cooper did not like or respect Mills or Johnson, and that some dissension resulted throughout the department.

On September 1, 1976, *The Free Lance Star* published an article dealing with the recent solving of a burglary case by the Spotsylvania Police Department. Only Investigator Mills was named in the article, and Mills was given the credit for cracking the case. The following day Cooper drafted a letter to the editor of the *Star* on department stationery.

After reading your article in Wednesday's September 1st paper, it appeared that the Harbin case on stolen antiques was handled by only one Police Officer. This is far from being correct. I don't know if the interview with Investigator Mills failed to reveal the work of the other officers involved or if the paper failed to print it.

Officer Mike Stanley was the first to get a break in the case. He informed the Investigator of the information he received. When Officer Stanley and Investigator Mills were given several items believed to have been stolen from Mrs. Harbin, they were first identified by Officer Stewart. Officer Stewart first investigated this incident in 1971, he obtained 19 fingerprints, photos, and took a full complete report at that time. It appeared that the items taken were kept by those involved making it almost impossible to trace.

The search warrant for the Brooks residence was obtained by Investigator Mills and Deputy Stewart. The warrant was carried out by Investigator Mills, Deputy Stewart, Deputy Peyton, and myself Deputy David Cooper, we also were assisted by Deputy Mike Stanley at this time. It involved working 8½ hours overtime for Deputy Peyton, Stewart, and myself, after having worked a full shift.

This letter is to enlighten you that Police Work is done by a Department. No individual can do it all. It's a team effort.

Instead of posting the letter, Cooper gave it to Sheriff Johnson. Johnson was "shocked" and stated that, were the letter to be published, his department would become the laughingstock of the state. Cooper was fired the next day.

The central issue in this litigation is "whether, in a context such as this, [Cooper's] expression is protected." *Kannisto v. City and County of San Francisco,* 541 F.2d 841, 842 (9th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977). The district court correctly utilized the factors set out in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) to resolve this issue: whether Cooper's speech [his statements in the letter] were directed toward any person with whom he would normally be in contact in the course of his daily work; whether the speech might threaten either discipline by immediate supervisors or harmony among co-workers; whether Cooper's relationship with the target of his speech was a working relationship for which personal loyalty and confidence were necessary; whether Cooper's speech would tend to damage the professional reputation of its targets or foment controversy and conflict among his co-workers; whether Cooper's speech reflected a difference of opinion on an issue of general public concern on which free and open debate is vital to informed decision-making by the electorate; and whether Cooper's employment was substantially or only tangentially involved in the subject matter of his speech—in all, the issue is whether he spoke out as an employee or as a member of the public.

In *Pickering* the plaintiff, a teacher, was discharged for writing a letter to the editor of a newspaper in which he criticized budgetary policies of the school board. The Court found that the speech at issue related to a matter of general public concern, that no interests of discipline or harmony were threatened since the teacher's relationship with his school board was not a close working relationship, and that, in sum, plaintiff had spoken out as a private citizen. Therefore Pickering's speech was entitled to constitutional protection. In contrast, measuring the facts in this case against the *Picker-*

562

*ing* yardstick, it is beyond question that Cooper's speech was not entitled to such protection. On this point we adopt in its entirety the analysis of the district court, although we discount the court's resolutions of disputed fact.[2]

We think that the first four *Pickering* factors require little comment in this case. Cooper's letter was directed against Investigator Mills and, indirectly, against Sheriff Johnson. The Spotsylvania Police Department is a small (11-man) organization in which mutual confidence and co-operation are essential. Cooper's letter related to a matter of internal administration of that organization, not to any matters of public debate, and would necessarily have a disruptive effect—at the very least, in attitudes toward Investigator Mills, who was alleged to be receiving too much credit for the work of the department. The letter would also escalate the already-existing dissension in the office, to the detriment of the whole department.

In discussing the last two *Pickering* factors, the district court cogently stated:

The matter on which Cooper wrote was not a matter of general public concern. It is clear that speech on publicly debated matters weighs more heavily in the *Pickering* balance than speech intended to serve one's private purposes. The existence of a personal pique or hope for vindication substantially downgrades Cooper's rights in this case since the public is not interested in Cooper's private ambitions.

Finally, Cooper's employment situation was central to the subject matter of his speech. He was clearly seeking to speak out as a deputy sheriff of Spotsylvania County and he signed himself as such. Speech by a citizen who is a public employee on a matter which is the subject of an ongoing debate is, in this Court's view, more legitimate than speech by a public employee that seeks to create a debate where none existed. . . .

Cooper v. Johnson, C/A No. 76–0523–R (E.D.Va., Oct. 7, 1977), Memorandum Opinion at 8–9. *See Kannisto v. City and County of San Francisco, supra.*

Since in our view "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict," *Bertot v. School District No. 1, supra,* we find it unnecessary to decide whether the *Pickering* balancing test in a proper case is one for the court or for the jury. Sheriff Johnson is entitled to judgment notwithstanding the verdict. *Cf. Neely v. Martin K. Eby Construction Co., Inc.,* 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967).

*AFFIRMED WITH DIRECTIONS TO ENTER JUDGMENT N.O.V.*

WIDENER, Circuit Judge, concurring:

I concur in the opinion of the court and in the result; yet I would add a word.

I think this case has nothing to do with freedom of expression in the *Pickering* sense. The record discloses beyond doubt that this was the private complaint of a disgruntled deputy, disappointed that his name was not put in the local newspaper, who plainly intended to bait and insult the sheriff, his employer, and to claim immunity by the device of a letter, ostensibly at least, directed to the editor of the paper. The deputy could only have expected to be fired, which was what happened.

WALTER E. HOFFMAN, Senior District Judge, dissenting:

The district court concluded that the question of whether Cooper's freedom of expression was constitutionally protected was one for resolution by the court rather than by the jury. The majority has held that this issue need not be met and, under the circumstances of this case, the speech

2. Since the district court had ruled that the issue was one for the court as a matter of law, he felt free to resolve disputed issues of fact. Since we are deciding *only* that the evidence in this case would admit of but one reasonable conclusion, we will discount any factual disputes which hinged in whole or in part on credibility resolutions. *See Bertot v. School District No. 1,* 522 F.2d 1171, 1178 (10th Cir. 1975).

was not in fact protected. I do not believe that we can avoid the issue raised by the district court and as I feel that, under the facts of this case, the balancing test in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), as supplemented by *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), may involve factual determinations for the jury, I would reverse.

There, of course, may be cases in which speech may be protected or unprotected as a matter of law. In between are those cases where the speech may or may not be protected, depending upon the nature of the employee's job, the effect the speech may have on the job, and the intent of the employer in discharging the employee. In these latter situations, it is my belief that a jury determination is required under proper instructions from the court.

The district court properly submitted three issues,[1] answered by the jury as follows:

(1) On balance, weighing plaintiff's right of freedom of speech against the sheriff's duty and right to preserve and promote the well-being of the sheriff's department, has plaintiff proven by a preponderance of the evidence and under the instructions of the court that his conduct in writing the letter to the editor and presenting the letter to the sheriff, in view of the circumstances surrounding the incident and the implications thereof, was protected by the First Amendment?

Answer, yes.

(2) Has the sheriff proven by a preponderance of the evidence that he would have reached the same decision to discharge plaintiff even in the absence of protected conduct?

Answer, no.

(3) The jury awards plaintiff actual damages in the amount of $4,000.

Assuming *arguendo* that the submission of the balancing test under *Pickering* and *Mt. Healthy* was proper for the jury, the record adequately supports the jury verdict. The letter, written by Cooper, was innocuous at best. It was, to a limited extent, directed to a matter of public concern; i. e., the accuracy of newspaper reporting. It contained nothing derogatory as to the investigator, Mills, or the defendant sheriff. It was not critical of the sheriff or his department.

Manifestly, the letter was a motivating or substantial factor in the decision to discharge the plaintiff as the sheriff concedes. It was probably the sole cause as Cooper was considered to be a competent deputy sheriff and his personnel record indicated no adverse marks. Assuredly, the question as to whether the plaintiff would have been discharged in any event, without regard to the protected conduct, was for the jury and, on this issue, the jury found against the sheriff. To say now that the jury had no part to play in the balancing test is, in my judgment, error.

*Wagle v. Murray*, 546 F.2d 1329 (9th Cir. 1976), arose in a similar context. The case involved a determination of whether a teacher's employment was terminated because of the exercise of First Amendment activities, or because he was an ineffective teacher.[2] The teacher was chairman of the local ACLU and engaged in several allegedly radical activities. The jury awarded plaintiff the sum of $50,000 which the trial court set aside and entered judgment n. o. v. The Ninth Circuit reversed, holding that judgment n. o. v. was improper where there was evidence from which a jury could infer that a First Amendment right had been

---

1. Actually five questions were submitted but the last two referred to punitive damages and the jury concluded that no such damages should be awarded.

2. In Cooper's case, the sheriff attempted to prove a number of factors which, he contended at trial, prompted Cooper's dismissal. He ad-

mits that he never complained to Cooper as to any of these matters prior to or at the time of his discharge. The jury quite properly rejected this affirmative defense. The majority now takes issue with the jury finding and appears to hold that Cooper's acts amounted to insubordination as a matter of law.

violated; and that a reasonable basis for the verdict existed even if, on the whole record, it appeared that the teacher was discharged for being ineffective. The Supreme Court later remanded the case, 431 U.S. 935, 97 S.Ct. 2645, 53 L.Ed.2d 252 (1977), for reconsideration in light of *Mt. Healthy.* On remand, 560 F.2d 401, 403, the Ninth Circuit held that the instructions given to the jury conformed to the requirements of *Mt. Healthy,* and that *it was for the jury, not the judge,* to determine whether the teacher would have been discharged in any event. The Supreme Court has since denied certiorari, 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978).

I agree that the relationship between teacher-employer and sheriff and deputy sheriff need not be identical. It is probably true that problems of morale and discipline are more important in law enforcement bodies, but it does not follow *as a matter of law* that questions pertaining to the sheriff-deputy sheriff relationship are to be removed from jury consideration, especially where, as in this case, the jury was properly instructed on this issue. *Byrd v. Gain,* 558 F.2d 553 (9th Cir. 1977). Cf. *Kannisto v. City and County of S. F.,* 541 F.2d 841 (9th Cir. 1976); *Gasparinetti v. Kerr,* 568 F.2d 311 (3rd Cir. 1977), *cert. denied* 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401. The *Byrd* case would support the views of the majority herein as the court granted summary judgment. In that case, however, the officers' comments were obviously critical of the department whereas, in the present case, we cannot hold as a matter of law that Cooper was attempting to publicly criticize investigator Mills or the defendant.

Two cases considered by the district court do require discussion. In *Norbeck v. Davenport Comm. Sch. Dist.,* 545 F.2d 63 (8th Cir. 1976), a school principal was not rehired, at least in part due to the fact that he acted as a negotiator for the local teachers' union. The jury found for the school district. On appeal, the court did say that whether Norbeck was exercising a constitutional right was for the court and not for the jury. However, as I read the opinion in *Norbeck* it would appear that the Eighth

Circuit was holding that his actions were not constitutionally protected *as a matter of law* as the opinion goes on and discusses the inherent conflict between a person acting in a supervisory position who is also a member of a union and, as to Norbeck, since he was a school principal, he had no constitutional right to serve as a union negotiator for the teachers he supervised.

In *Bertot v. School Dist. No. 1,* 522 F.2d 1171 (10th Cir. 1975), the court held that *plaintiff* was entitled to a judgment n. o. v. because the nonrenewal of her employment contract violated her First Amendment rights where she engaged in very limited participation in an effort by students to start an underground newspaper; the court holding as a matter of law that she was being discharged for her participation in protected activity.

With the recent trend of decisions emanating from the Supreme Court demonstrating that issues of this type are for the "trier-of-fact," I cannot agree that the present case, considered under all the facts and circumstances, was proper for review by the district court under a judgment n. o. v. proceeding. I would reverse and enter judgment on the verdict.