**Arlene Villanova FRACARO, Plaintiff,**

**v.**

**Paul M. PRIDDY et al., Defendants.**

**No. C–78–291–WS.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

May 1, 1981.

4. In light of this ruling, the Court need not rule on plaintiff's motion for leave to appeal in forma pauperis.

William G. Pfefferkorn and Jim D. Cooley, Winston-Salem, N. C., for plaintiff.

Richard Tyndall, Winston-Salem, N. C. and William F. Marshall, Jr., Danbury, N. C., for defendants.

## MEMORANDUM OPINION AND ORDER

GORDON, Chief Judge.

This case was noticed for hearing on March 25, 1981, at 2:00 P. M. in the United States Courthouse in Winston-Salem, North Carolina. Pursuant to the notice, the summary judgment motions of the individual defendants and of the County of Stokes were heard. Having considered the arguments of counsel, the briefs, and the materials of record, the Court concludes that the motion by the County of Stokes should be

granted, and the motion by the individual defendants should be granted in part and denied in part.

On July 3, 1978, the plaintiff Fracaro instituted this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging that her constitutional rights had been violated in various ways by the termination of her employment as Eligibility Supervisor of the Stokes County Department of Social Services. She named the County of Stokes and six persons as defendants: Paul M. Priddy, Director of the Stokes County Department of Social Services, individually and in his official capacity; Elsie Dearmin, Ruby Goad, and Mary Wright, members of the Stokes County Board of Social Services, individually and in their official capacity; and Frank Dalton and Elizabeth Heath, members of the Stokes County Board of Social Services in their official capacity. The Stokes County Board of Social Services was not named as a defendant. At the time of filing the complaint, the plaintiff also moved for a preliminary injunction seeking reinstatement in her job. A hearing was held on August 11, 1978, before Magistrate Eliason. Magistrate Eliason made lengthy findings of fact and conclusions of law, applying the *Blackwelder* standards to the plaintiff's prayer for injunctive relief. *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977). The magistrate recommended that the plaintiff's motion for a preliminary injunction be denied, and this Court so ordered on September 18, 1978. The Fourth Circuit affirmed the denial of the injunction on May 10, 1979, 598 F.2d 614.

The individual defendants' summary judgment motion asserts five separate grounds for granting the motion. The Court will discuss these five grounds seriatim, and then will discuss the County's motion for summary judgment. The undisputed facts are set forth in the course of this opinion. The Court notes at the outset that it cannot accept as undisputed the Findings of Fact made by the magistrate in connection with the preliminary injunction hearing. The magistrate was bound to *find* facts, that is, to resolve disputed issues of fact and make credibility determinations. It is apparent that the magistrate did not find the plaintiff to be a very credible witness. Yet for purposes of this motion, the Court must draw inferences in favor of the non-moving party, who is the plaintiff. The defendants have the burden of showing the absence of any genuine issue of material fact.

## I. The Claimed Violation of the First Amendment

The plaintiff alleges that she was terminated from her position because of the exercise of her rights of free speech under the First and Fourteenth Amendments, in violation of 42 U.S.C. § 1983. On June 28, 1978, the defendant Priddy dismissed her as Eligibility Supervisor on the ground that she publicly revealed confidential information about clients of the Department of Social Services. The letter of dismissal referred to two instances in which Mrs. Fracaro appeared on news broadcasts of WXII–TV.[1] The defendants contend that

1. Following are transcripts of the two news stories as broadcast on June 23 and June 26.

June 23

NEWSWOMAN:

Veno and Constance Hutchins live in a Stokes County subdivision with their four children and a niece. The Hutchins have been charged with child abuse. Mrs. Hutchins says she received a Court summons yesterday to appear for an immediate custody hearing next Monday requested by Social Services; but, she says the family has not had any home conferences with social workers on the matter, and she had no idea the Department wanted to remove two of her children from the home until a subpoena was delivered last night. Today a social worker and the Director of Social Services did pay a visit. Mrs. Hutchins and her husband were at work at the time.

Barbara Taylor, the worker assigned to the case, told us she had attempted to make home visits on at least four other occasions but found no one at home. Mrs. Taylor also said she had not left a note to say she had been by, nor had she called to say she was coming at any of those times. Neither she nor the Department Director, Paul Priddy, would do an on camera interview. Priddy said he had no comment today but said we could call him next week.

Mrs. Fracaro's statements were not protected speech under the First Amendment.

■ A public employee does not forfeit his protection against governmental abridgement of freedom of speech. A public employee does not have absolute First Amendment rights, however. The Supreme Court has established a "balancing" test for resolution of the competing interests. "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The *Pickering* decision discussed four factors which the Court took into account in reaching its conclusion that the plaintiff teacher's statements did not impede the performance of his classroom duties or interfere with the regular operation of the schools generally. The "efficiency" factors are: (1) whether the statements are directed toward any person with whom the plaintiff would be in contact in the course of his daily work; (2) whether the statements might threaten either discipline by immediate supervisors or harmony among co-workers; (3) whether the plaintiff's relationship with the target of the speech is a working relationship for which personal loyalty and confidence are necessary; and (4) whether the statements would tend to damage the professional reputation of its targets or foment controversy and conflict among co-workers. *Cooper v. Johnson*, 590 F.2d 559, 561 (4th Cir. 1979). Two other factors discussed by the *Pickering* Court might be termed the "public concern" factors: (1) whether the statements reflect

Meanwhile, Mrs. Hutchins says the department has treated her unfairly.

MRS. HUTCHINS:
Everybody would be in for child abuse if they didn't investigate it. Its odd and they ain't going to take your children from you and serve you with a subpoena? Because, the police officer told me that this subpoena was issued about 3:00 yesterday afternoon and was served on me around 6:00.

NEWSWOMAN:
Arlene Fracaro, the Social Services Eligibility Supervisor, charges that the Hutchins' case is a good example of the way social workers mishandle many child abuse cases.

MRS. FRACARO:
She was reported for a suspected child abuse and neglect; but, no home call was ever made, no follow up. She was told to go—her solution was told to go to Florida.

NEWSWOMAN:
We talked with several Social Services employees whom confirmed Mrs. Fracaro's allegations. Those employees told us of a number of suspected child abuse and neglect cases which were never investigated. One case reportedly involved a six month old baby weighing less than seven pounds. Workers say the baby died several months later. Meanwhile, those who talked with us refused an on camera interview saying that they had been warned that if they talked they'd be fired. I'm Jane Harrington, News Center 12 in Stokes County.

June 26
NEWSWOMAN:
Last week Mrs. Constance Hutchins received a summons to appear in District Court today on an immediate custody hearing requested by the Stokes County Department of Social Services. The Hutchins have been charged with child abuse. On Friday, Mrs. Hutchins told News Center 12 that the case had not been investigated by Social Services, that no social worker ever visited her home or talked with her children or neighbors about the case. Mrs. Hutchins contended that she and her husband were innocent. Today District Court Judge Foy Clark dropped the child abuse charge and the Hutchins said justice had been rendered at last.

MR. HUTCHINS:
The Judge said that he had no doubt in his mind that we were not guilty of it.

MRS. HUTCHINS:
He completely dismissed it. He said there was no doubt in his mind at all, that I was just a person trying to seek help and got took advantage of.

NEWSWOMAN:
The Eligibility Supervisor for Social Services had backed Mrs. Hutchins in her fight against the agency. Arlene Fracaro told us many child abuse cases are mishandled in Stokes County. Today Mrs. Fracaro said she had been told her comments to the news media last week had cost her her job.

MRS. FRACARO:
A rumor through the grapevine is that I probably will be fired for speaking in this client's behalf, of trying to uncover in the Department of Social Services the misuse and just dereliction of duty by the Services, AFDC Services.

NEWSWOMAN:
This is Jane Harrington, News Center 12 in Stokes County.

a difference of opinion on an issue of general public concern on which free and open debate is vital to informed decision-making by the electorate; and (2) whether the speaker's employment is substantially or only tangentially involved in the subject matter of the speech. *Id.* [2]

■ The Court is aware of cases which hold that whether the plaintiff is lawfully exercising a constitutional right is a matter for determination by the Court. *See Schneider v. City of Atlanta*, 628 F.2d 915, 918–19 (5th Cir. 1980); *Greminger v. Seaborne*, 584 F.2d 275 (8th Cir. 1978); *Norbeck v. Davenport Community School District*, 545 F.2d 63 (8th Cir. 1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). The Fourth Circuit, however, has declined to lay down a hard and fast rule. *Cooper v. Johnson*, 590 F.2d 559, 562 (4th Cir. 1979). Although there are cases from this circuit which have held on summary judgment motions that statements

that resulted in the loss of public employment were not protected by the First Amendment [*see English v. Powell*, 592 F.2d 727 (4th Cir. 1979); *Hopkins v. Dolinger*, 453 F.Supp. 59 (W.D.Va.1978); *Ely v. Honaker*, 451 F.Supp. 16 (W.D.Va.1977), *aff'd mem.*, 588 F.2d 1348 (4th Cir. 1978)], it is apparent that those decisions were reached when the undisputed facts could lead to only one conclusion.[3] In the instant case, many of the material facts are disputed; even where undisputed, conflicting inferences may be drawn. For example, the "efficiency" factors are concerned with the degree of disruption that will occur in the public agency due to strife precipitated between the speaker and the "target" of the speech. In the June 23 and 26 broadcasts, Mrs. Fracaro was critical of the social workers in the Department of Social Services in Stokes County. The Department is divided into two principal sections: eligibility determination and services. The social workers

**2.** Another consideration discussed in *Pickering* is whether the statements were made with the knowledge that they were false or with reckless disregard of whether they were false or not. The plaintiff Pickering had argued to the Supreme Court that the *New York Times* [*New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] standard should be used to judge the statements at issue. The Court declined to lay down the *New York Times* rule as a general standard, 391 U.S. at 569, 88 S.Ct. at 1735, but did frame its holding in those terms. ("In sum, we hold that ... absent proof of false statements knowingly or recklessly made...." 391 U.S. at 574, 88 S.Ct. at 1737.) A later Supreme Court case states in a footnote: "The *Times* standard of proof has also been required to support the dismissal of a public school teacher based on false statements made by the teacher in discussing issues of public importance. *Pickering v. Board of Education*, 391 U.S. 563 [88 S.Ct. 1731, 20 L.Ed.2d 811] (1968)." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 31 n.1, 91 S.Ct. 1811, 1814 n.1, 29 L.Ed.2d 296 (1971). The knowing-or-reckless-falsity standard is often ignored by courts [*e.g., Cooper v. Johnson*, 590 F.2d 559 (4th Cir. 1979)], and indeed it may not be an appropriate inquiry in all cases. In a case such as the instant one, in which the statements at issue may be viewed objectively as being true or false (in contrast to cases in which the statements have no intrinsic "truth" because they are statements of opinion or statements advocating a program or policy), whether the statements are knowingly or recklessly false is prob-

ably an initial inquiry to be made before the *Pickering* balancing begins. It is important to note, however, that *Pickering* left open the question whether knowingly or recklessly false statements would be protected by the First Amendment if neither could they be shown to have had any harmful effects, nor could they reasonably be presumed to have had any harmful effects. 391 U.S. at 574 n.6, 88 S.Ct., at 1737 n.6. If the statements were found to be knowingly or recklessly false, it is apparent that the defendant could prevail more easily than if the statements were true, were thought to be true, or were not made with reckless disregard of their falsity. In the instant case, the knowing-or-reckless-falsity of the statements is disputed, and is but another factor that militates against summary judgment.

**3.** *E.g., English, supra*, 592 F.2d at 732 ("The record before us admits of only one construction."); *Ely, supra*, 451 F.Supp. at 20–21 ("This court is highly cognizant of the essential role that freedom of speech plays in our American society. It is no small matter when a court is asked to rule against such freedom of expression on a motion for summary judgment. Obviously, any court treads a fine line when applying the balancing test enunciated in *Pickering*. In so many cases of this nature, the comparison of competing interests reveals the scales to be closely balanced. However, the Court is simply unable to conclude that such a situation prevails in the instant case.").

are grouped in "services", and this unit was under the direct supervision of the defendant Priddy. The plaintiff Fracaro was the supervisor of the "eligibility" section, and she reported directly to the defendant Priddy. There is dispute about the degree of harmony necessary between the two sections to serve efficiently the citizens of Stokes County. Rational factfinders could draw differing conclusions about the ability of the Department to perform its function adequately if Mrs. Fracaro had stayed on after her television appearances. If the defendants fail to show any significant interference with the efficient operation of the department, Mrs. Fracaro's termination for the stated reasons would not be justified. *Tygrett v. Barry*, 627 F.2d 1279, 1282 (D.C.Cir.1980); *Porter v. Califano*, 592 F.2d 770, 773 (5th Cir. 1979); *Jannetta v. Cole*, 493 F.2d 1334, 1337 (4th Cir. 1974).

■ The defendants claim that Mrs. Fracaro's termination resulted from the invocation of a rule derived from state law which prohibits the dissemination of confidential information. Mrs. Fracaro's alleged breach of a confidentiality rule does not eliminate the need for a *Pickering*—type analysis, however. In order to justify the application of a confidentiality rule in this case, the defendant Priddy must show a state interest in confidentiality applicable on these facts which outweighs the public and individual interests in the particular statements made. *Hanneman v. Breier*, 528 F.2d 750, 754 (7th Cir. 1976). Moreover, whether any "confidential" information was disclosed is open to question when construed in the light most favorable to the plaintiff. The state law in question makes it unlawful to disclose "any list of names or other information concerning persons applying for or receiving public assistance that may be directly or indirectly derived from the records, files or communications of the Department of Human Resources or the county boards of social services, or acquired in the course of performing official duties. . . ." N.C.Gen.Stat. § 108–45(a). Clearly, Mrs. Fracaro's comments on the June 26 broadcast were general criticisms about the "dereliction of duty" by services personnel. It is also clear that the intent of the law is to protect the confidentiality of recipients of public assistance, and not to shield public officeholders from criticism. As to the comments on the June 23 broadcast, Mrs. Fracaro contends that she made her comments for the television camera at Mrs. Hutchins' request. The subject of the broadcast was the Hutchins' receipt of a subpoena to appear in district court for an immediate custody hearing due to alleged child abuse. Child abuse falls within the province of the "services" section, and Mrs. Fracaro maintains that her comments were not derived from information in the official records of the Department. Whether those comments were a breach of the confidentiality rule, and if they were, whether they should have occasioned Mrs. Fracaro's dismissal, are matters for resolution by the jury.[4]

There is no doubt that child abuse is an issue of public concern. Whether Mrs. Fracaro spoke out as a member of the public or as an employee, [*see Cooper v. Johnson, supra*, 590 F.2d at 561] however, is open to question. In the *Pickering* scales, of course, "public" speech made as a citizen is weighted more than speech not about matters of public concern made as an employee to serve one's own personal purposes. Finally, the Court notes that the record contains lengthy allegations and counter-allegations which are far afield from the June 23 and June 26 television broadcasts which the de-

---

4. The Fifth Circuit has recently decided a case which discussed the admissibility of evidence of a confidentiality policy. *Williams v. Board of Regents of the University System*, 629 F.2d 993 (5th Cir. 1980). The court of appeals in *Williams* upheld the trial judge's exclusion of evidence of the defendant's confidentiality policy on the ground that as a matter of law the policy conflicted with state law. *Id.* at 1001.

Although the Fifth Circuit takes a different view than this Court about whether the court or the jury should perform the balancing enunciated in *Pickering*, its discussion of factors pertinent to whether a confidentiality policy would constitute a defense may be useful in framing a jury instruction. *See id.* at 1000 & n.11.

fendant Priddy assigned as the reasons for Mrs. Fracaro's dismissal. The defendants assert that Mrs. Fracaro would have been fired in any event had she not been a featured performer on the six o'clock news on June 23 and 26. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The true reasons for her dismissal, however, are not open to conclusion from undisputed facts.

Summary judgment will not be granted on the ground that Mrs. Fracaro's statements were not protected by the First Amendment, nor on the defendants' alternative ground that the decision to fire her would have been made regardless of her statements of June 23 and June 26 to WXII-TV.

## II. Liability of the Individual Board Members

The five members of the Stokes County Board of Social Services are named as defendants. Three members, Dearmin, Goad, and Wright, are named individually and officially; two members, Dalton and Heath, are named only in their official capacity. The plaintiff's First Claim for Relief is based on 42 U.S.C. § 1983. Specifically, she alleges that she was unlawfully terminated in violation of her rights of free speech as protected by the First Amendment. The North Carolina General Statutes set forth the duties and responsibilities of the county Boards of Social Services in N.C.Gen.Stat. § 108–15. The duties and responsibilities of the Directors of the county Departments of Social Services are set forth in N.C.Gen. Stat. § 108–19. It is the *Director* who has the power to appoint personnel within the Department of Social Services, not the Board. Persons employed by county Departments of Social Services are under the umbrella of the State Personnel System, found in chapter 126 of the General Statutes. The State Personnel Commission is charged with the responsibility of establishing policies and rules governing, *inter alia,* suspension and dismissal of employees. N.C.Gen.Stat. § 126–4. The Commission

has adopted a comprehensive policy regarding disciplinary action, suspension, and dismissal. That policy begins: "An employee, regardless of occupation, position, profession, or work performed, may be warned, reprimanded, suspended or dismissed by an *appointing authority.*" N.C.Dept. of Administration, *Personnel Policies for Local Government Employment Subject to the State Personnel Act* 4–1 (1978 rev. ed.) (emphasis added). Thus, it is clear that the Director, as the appointing authority, had the sole authority to dismiss Mrs. Fracaro from her position. The question for resolution is whether the members of the Board may be either officially or individually liable for an action which they had no power either to perform or to prevent.

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), makes clear that a municipality may not be held liable under § 1983 on a *respondeat superior* theory. 436 U.S. at 691. Applying the reasoning in the *Monell* case to the instant facts, the Court concludes that *respondeat superior* will not support a finding of liability on the part of the Board members. The Board is charged with establishing policies for the programs established by chapter 108 of the General Statutes. N.C.Gen.Stat. § 108–7. The Board members are chosen by the county commissioners and by the Social Services Commission. *Id.* § 108–9. Among the duties and responsibilities of the Board are the selection of the county Director of Social Services [*id.* § 108–15] and the determination of his salary [*id.* § 108–18]. Applying the rationale of *Monell,* in order to find the Board members liable, it would be necessary to find that the act of the defendant Priddy was an official act for the Board members. *Monell, supra,* 436 U.S. at 690, 98 S.Ct. at 2035; *Burt v. Abel,* 585 F.2d 613, 617 n.9 (4th Cir. 1978). Priddy's act of dismissing Mrs. Fracaro *might* have been an official act for the Board; it *might* have been an official act for the Stokes County Department of Social Services; but it is unnecessary to decide those issues because neither entity is named as a defendant. Mrs. Fracaro's termination, however, may

certainly not be deemed to be an act for the members of the Board. The members of the Board generally act only as a Board. It is the *Board* which has statutorily authorized duties and responsibilities.[5]

The plaintiff has alleged the involvement of the members of the Board in her dismissal, but has not set forth facts to show that there is a genuine issue for trial in this regard. She alleges that she overheard one of the members call for her dismissal at a Board meeting, and she alleges that in May the defendant Priddy told her that the Board had instructed him to fire her. Even if true, these assertions cannot change the fact that only Priddy had the authority to terminate her employment. Priddy's perception of the Board's authority, and the Board members' perception of the Board's authority do not alter the fact that the Board had no authority to dismiss Mrs. Fracaro. *See Hall v. Tawney*, 621 F.2d 607, 615 (4th Cir. 1980); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).

Summary judgment will be granted for the individual members of the Board on the plaintiff's First Claim for Relief.

### III. Good Faith Immunity

■ The defendants assert that they should be found to be immune from liability in their individual capacities as a matter of law. This defense applies to the § 1983 claim in Count 1. The only individual defendant remaining in that claim is the defendant Priddy. The defendants correctly read *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) to mean that there is no good faith immunity for persons in their official capacity. As to whether the defendant Priddy is entitled to good faith immunity in his individual capacity, the Court believes that this issue should be resolved by the jury. *Paxman v. Campbell*, 612 F.2d 848 (4th Cir. 1980), does not compel a contrary result. In *Paxman*, the Fourth Circuit had previously held that a maternity leave policy substan-

tially similar to the one challenged by Paxman was constitutional. Under those circumstances, the court of appeals held that the good faith immunity defense was established as a matter of law. In the circumstances of the case at bar, the Court concludes that the defendant should be required to prove good faith as an affirmative defense in the conventional manner. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation: A Guide to § 1983* § 8.13 (1979).

### IV. The Retention of Counsel Claim

■ This claim is set forth in the plaintiff's Third Claim for Relief. The defendants assert that no evidence has been adduced to support this claim for relief. The plaintiff asserts that in May, 1978, the defendant Priddy cautioned her about retaining an attorney and warned her that such action could result in her dismissal. The plaintiff in her complaint alleges that her "dismissal was due in part to her retention of legal counsel." Para. 31. Although it is true that the infringement of a protected right need not be the *sole* reason for the denial of employment, it must be at least a "substantial" or "motivating" factor. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Because of the timing of her dismissal on June 28, 1978, and based on the factual record that is now before the Court, there is no way that a rational factfinder could conclude that Mrs. Fracaro's retention of legal counsel in May was a substantial or motivating factor in her dismissal.

Summary judgment will be granted for Count 3.

### V. The Section 1985 Conspiracy Claims

■ Plaintiff's Second Claim for Relief alleges a class-based conspiracy to deprive her of the equal protection of laws in violation of 42 U.S.C. § 1985(3) and § 1986. To state a conspiracy claim under § 1985(3) which will withstand a summary judgment

---

5. *Members* of the Board are referred to only in one instance in the statutes, other than regarding their appointment or their compensation.

In N.C.Gen.Stat. § 108–16, *members* of the Board are authorized to inspect records in the office of the Director.

motion after the defendants have placed sworn denials in the record, the plaintiff must demonstrate that there are specific facts showing that there is a genuine issue for trial on the following elements: (1) a conspiracy; (2) a purpose of depriving a person or class of persons of the equal protection, or privileges and immunities under the law; (3) an action in furtherance of the conspiracy; and (4a) personal or property injury *or* (4b) deprivation of a right or privilege of citizenship. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Savina v. Gebhart*, 497 F.Supp. 65, 67 (D.Md.1980). *Griffin* left open the question whether § 1985(3) extends to conspiracies not motivated by racially discriminatory intent. 403 U.S. at 102 n.9, 91 S.Ct. at 1798 n.9. The Fourth Circuit also has not decided the question expressly, but appears not to have foreclosed non-racial classes from the sweeping language of the statute. *See United Land Corp. of America v. Clarke*, 613 F.2d 497, 501 (4th Cir. 1980); *Rodgers v. Tolson*, 582 F.2d 315, 317–18 (4th Cir. 1978). This Court has held previously that the coverage of § 1985(3) is not limited to members of a group that would be a "suspect" class under the Fourteenth Amendment. *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 570 (M.D.N.C. 1979). The plaintiff apparently alleges that the defendants conspired against her because of her membership in two "classes": (1) persons of Italian and Spanish descent, and (2) recent immigrants to North Carolina from California. The defendants contend that neither category is a protected class within the meaning of § 1985(3). The defendants have raised a serious issue whether the "recent immigrant" class is a

sufficient basis for § 1985(3) protection. *See Morgan v. Odem*, 552 F.2d 147, 149 (5th Cir. 1977). Assuming without deciding that the plaintiff has alleged a cognizable class for § 1985(3) purposes, however, the Court finds that the plaintiff is unable to withstand summary judgment for a more fundamental reason: that is, she has failed to set forth specific facts as would be admissible in evidence to show the existence of a conspiracy. *See Henzel v. Gerstein*, 608 F.2d 654, 659 (5th Cir. 1979).

Plaintiff's Second Claim for Relief is grounded on her assertion that she overheard one of the Board members say during a Board meeting that she should be fired because she was "an outsider and a foreigner." Mrs. Fracaro also says that in her conversation with the defendant Priddy on the same evening following this meeting, Priddy said, "There is a conspiracy to get rid of the supervisor [Fracaro]." These are not sufficient facts to show the existence of a conspiracy. Taken in the light most favorable to the plaintiff, these facts do not tend to establish that there was any *agreement* on the part of the defendants to fire her for an illegal reason. At most, she has demonstrated a class-based animus on the part of a single Board member.[6] With no other extrinsic evidence of a conspiracy, Priddy's statement would not be admissible for its truth.[7] Without a conspiracy, the plaintiff has no claim under § 1985(3); without a claim under § 1985(3), she has no claim under § 1986. *Lessman v. McCormick*, 591 F.2d 605, 608 (10th Cir. 1979).

Summary judgment will be granted for Count 2.

---

**6.** The plaintiff's own testimony reveals that the alleged "outsider-foreigner" remark was immediately challenged by another Board member.

**7.** Fed.R.Civ.P. 56(e) imposes a requirement that facts set forth in support of or in opposition to a summary judgment motion must be "admissible in evidence." It is a close question whether the "outsider-foreigner" remark would be admissible because of Mrs. Fracaro's inability to identify the speaker with precision or even to state who were the occupants of the room at the time the remark was made. (Mrs. Fracaro

overheard the remark from another room.) The "outsider-foreigner" remark, however, even if admissible, cannot bootstrap the Priddy statement into admissibility because it is not independent evidence that a conspiracy existed. *United States v. McCormick*, 565 F.2d 286, 289 (4th Cir. 1977), *cert. denied*, 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978). Fed.R.Evid. 801(d)(2)(E) applies to civil as well as criminal cases. 4 J. Weinstein & M. Berger, *Weinstein's Evidence* 801–166 (1979).

Plaintiff's Fourth Claim for Relief alleges that in furtherance of the conspiracy, the defendant Priddy sought to hinder the course of justice by intimidating potential witnesses for the plaintiff. Because the plaintiff has failed to show the existence of a conspiracy, summary judgment will be granted for Count 4 as well.

## VI. Liability of the County of Stokes

The County of Stokes seeks summary judgment on the ground that it is not liable to plaintiff even if all her assertions are true. In her complaint, Mrs. Fracaro refers twice to the Stokes County Board of Commissioners, but the totality of involvement of any county official other than the defendant Priddy or members of the Board of Social Services seems to have been a disclaimer of authority to do anything about personnel matters within the Department of Social Services. As outlined earlier in this opinion, the Board of Commissioners and the County Manager were correct in their apprehension of the limitations of their authority, because no one except the defendant Priddy had the authority to hire and fire persons employed in the Department of Social Services. Because of the lack of showing that Mrs. Fracaro was terminated pursuant to any rule or policy of Stokes County, coupled with the lack of personal involvement in her termination by the County Commissioners or County Manager, the County of Stokes contends that it is entitled to summary judgment under the authority of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In *Monell,* the Supreme Court held that municipalities could be held liable as "persons" under § 1983, but set limits on the circumstances:

"We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

436 U.S. at 694, 98 S.Ct. at 2037. The plaintiff does not contend that she was discharged pursuant to an official "policy or custom" of Stokes County. She contends rather that the defendant Priddy acted as an official of Stokes County in discharging her; that is, that her discharge was the implementation or execution of a "decision officially adopted and promulgated" by Priddy in his official capacity. 436 U.S. at 691, 98 S.Ct. at 2036. The issue for resolution is thus whether the defendant Priddy acted for Stokes County when he fired Mrs. Fracaro. To say this is not to imply that the County of Stokes might be liable for Priddy's actions under a theory of *responde-at superior.* Of course it may not. Priddy, however, had the sole authority to fire Mrs. Fracaro; the Court must decide whether the action that he took was an action for Stokes County. *See Van Ooteghem v. Gray,* 628 F.2d 488, 494–95 (5th Cir. 1980); *Burt v. Abel,* 585 F.2d 613, 617 n.9 (4th Cir. 1978).

To this contention of the plaintiff's, the county responds that the defendant Priddy did not act for Stokes County, but for the State of North Carolina. As previously discussed, the Board of Social Services selects the county Director of Social Services "according to the merit system rules of the State Personnel Board." N.C.Gen.Stat. § 108–15. Stokes County has a five-member Board. Two members are chosen by the County Board of Commissioners, two members are chosen by the Social Services Commission (a state agency), and the fifth member is chosen by the four members so appointed. *Id.* § 108–9. It is thus apparent that the county is at most only equal to the state in the authority it can exert over the Director. Another factor in the analysis that is more telling is the manner in which the Department of Social Services is funded. For the three fiscal years ending in 1979–80, the County of Stokes provided between 12 and 13 per cent of the funds for the Stokes County Department of Social Services. The amount of money committed to the Department of Social Services is not

totally discretionary with the county, however. The Department of Human Resources (a state agency) reviews the budget submitted by the county, and has the power to approve or to disapprove the amount of funds the county desires to allocate to the Department of Social Services. In effect, the Department of Human Resources has the power to make a final determination of an appropriate budget of total county funds that is binding upon the county. *Id.* § 108–54. Under these facts, the defendant Priddy's official acts appear to be acts for the State of North Carolina, rather than acts for the County of Stokes. Also as previously noted, employees of the Department of Social Services fall within the purview of the State Personnel System. As that system is established, an appeal from any suspension or dismissal is taken by the employee not to the county, but to the State Personnel Commission. N.C.Dept. of Administration, *Personnel Policies for Local Government Employment Subject to the State Personnel Act* 4–4 (1978 rev. ed.). On balance, the Court is unable to conclude that the defendant Priddy's acts were acts for Stokes County.

Summary judgment will be granted for the County of Stokes.

For the foregoing reasons, it is therefore ORDERED that the motion for summary judgment by the defendant County of Stokes should be, and the same is hereby, GRANTED.

It is further ORDERED that the individual defendants' summary judgment motion on the First Claim for Relief should be, and the same is hereby, GRANTED as to the defendants Dearmin, Goad, Wright, Dalton, and Heath; and DENIED as to the defendant Priddy.

It is further ORDERED that the individual defendants' summary judgment motion on the Second, Third, and Fourth Claims for Relief should be, and the same is hereby, GRANTED.