**Ron F. GREMINGER et al., Plaintiffs-Appellees, Cross-Appellants,**

v.

**Charles SEABORNE et al., Defendants-Appellants, Cross-Appellees.**

Nos. 78–1040, 78–1164.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1978.

Decided Sept. 19, 1978.

As Amended Sept. 21, 1978.

James G. Freer of Colson & Wagner, Farmington, Mo. (argued), and David L. Colson, Farmington, Mo., on brief, for defendants-appellants, cross-appellees.

Michael H. Gottesman of Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C. (argued), Robert M. Weinberg and David Silberman, Washington, D. C., Joe T. Buerkle, Buerkle, Lowes & Beeson, Jackson, Mo., and David Rubin, Washington, D. C., on brief for plaintiffs-appellees, cross-appellants.

Before LAY, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

On March 20, 1975, the Board of Education of the Reorganized School District No. R–IV of St. Francois and Washington Counties, Missouri (school district) voted not to renew the teaching contracts of Ron F. Greminger, Sherry J. Greminger and Gary D. Burkett. The teachers brought suit under 42 U.S.C. § 1983 against the school district, the principal of the high school where they had been employed and the individual members of the Board of Education serving at the time of suit and at the time of the nonrenewal. Plaintiffs, who had publicly advocated higher teacher salaries and affiliation with the Missouri National Education Association, a teacher organization, charged that their contracts were not renewed in retaliation for these activities, in violation of their first amendment rights of free speech and association. After a three-day trial, the jury returned a verdict in favor of all plaintiffs against four of the board members.[1]

On appeal, defendants contend that their motions for a directed verdict and for judgment notwithstanding the verdict should have been granted because plaintiffs failed to prove that their activities were protected by the first amendment or that the termination of their employment was motivated

1. Judge Meredith granted defendants' motions to dismiss the school district, Jesse F. Dopp, the school principal, and James Brewer, who became a board member after the nonrenewal vote, and he directed a verdict against the plaintiffs' claim for punitive damages. Of these rulings, plaintiffs challenge only the dismissal of the school district.

in substantial part by impermissible considerations. In addition, defendants allege error in the admission of evidence on the issue of whether the Gremingers had tenure.[2] They also contest the district court's order directing plaintiffs' reinstatement. On cross-appeal, plaintiffs challenge the dismissal of the school district and the amount of attorney fees awarded.

We affirm the entry of judgment on the jury verdict, as herein modified, as to the liability of defendants, Charles Seaborne, Denver Penberthy, Michael Mason and John Momot, and we affirm the district court's order directing reinstatement. However, we vacate the awards of damages and attorney fees and remand this case to the district court for reconsideration of damages, other equitable relief and attorney fees in accordance with this opinion.

## I.

By contracts renewed annually, the school district employed the Gremingers beginning January 1970, and Gary Burkett beginning September 1971. Had they received a sixth contract renewing their employment for the school year 1975–1976, the Gremingers would have earned tenure under the Missouri Teacher Tenure Act, Mo. Ann.Stat. § 168.104 (Vernon).

During the 1974–1975 school year, Ron Greminger, president of the local Community Teachers Association (CTA) and member of the CTA Salary Committee; Sherry Greminger, and Gary Burkett, also active on behalf of the CTA Salary Committee, appeared before the school board on several occasions. These teachers were leaders in an effort to secure for teachers' salaries, certain funds known as "the windfall money" which had been allocated to the school district above the usual appropriation. The record indicates that the principal, the school superintendents during this period

and the school board members believed plaintiffs had improperly bypassed the usual "chain of command," initially by seeking information about the windfall money from the school superintendent and ultimately by taking their cause to the community.

Plaintiffs attended school board meetings in November and December 1974 to present their position, but were told that time limitations precluded discussion of the windfall money issue. With the paycheck following the December board meeting, the teachers received notice that salary increases had been denied. When plaintiffs then sought the assistance of the Missouri National Education Association (MNEA), they broke a tradition of association with the Missouri State Teachers Association, a teacher organization with which the local CTA had long been affiliated, and with which the board members apparently felt they could more comfortably negotiate. Plaintiffs also initiated a series of public meetings. At one of these a confrontation occurred between Ron Greminger and defendant, Denver Penberthy, chairman of the school board. In its February 1975 meeting, the school board denied admittance to the MNEA representative accompanying Ron Greminger. Testimony was presented at trial indicating that the board considered the MNEA a radical or union-oriented group. Then, on March 20, 1975, the school board met in closed session and voted not to renew plaintiffs' contracts.

## II.

We find that plaintiffs' activities were clearly within the scope of first amendment protection. See *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Allocation of funds for increased teachers' salaries is a subject of public concern upon which teachers may certainly comment. *Gieringer v.*

---

2. The Gremingers, believing that they had tenure under the Missouri Teacher Tenure Act, Mo.Ann.Stat. § 168.104 (Vernon), claimed denial of procedural due process in the board's failure to provide prior notice, a hearing or reasons in connection with the termination. The district judge dismissed the due process claims at the close of all the evidence, instructing the jury that plaintiffs had no right to notice and a hearing. This ruling is not challenged on appeal. We hold that even if the district judge erred in admitting evidence on the question of tenure, which we do not decide, defendants suffered no prejudice.

*Center School District No. 58*, 477 F.2d 1164, 1167 (8th Cir.), *cert. denied*, 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed.2d 66 (1973). Freedom of association includes membership in unions or other organizations concerned with "business and economic causes." *American Federation of State, County and Municipal Employees v. Woodward*, 406 F.2d 137, 139 (8th Cir. 1969). While some animosity among plaintiffs' colleagues developed from the controversy surrounding MNEA affiliation, we cannot agree on this record that disruption of school district operations or the educational process resulted. Nor is there evidence that plaintiffs harassed other teachers or the board. Moreover, the record does not reflect any false statements or deliberate or reckless inaccuracies made by the plaintiffs. *See Pickering v. Board of Education, supra*, 391 U.S. at 569–74, 88 S.Ct. 1731.

 Despite plaintiffs' probationary or nontenured status, the school board could not constitutionally refuse to renew their contracts in retaliation for the exercise of their first amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 596–98, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Whether plaintiffs were exercising a constitutional right in speaking publicly about teachers' salaries and advocating MNEA membership was a matter for determination by the trial court not the jury. *Norbeck v. Davenport Community School District*, 545 F.2d 63, 68 (8th Cir. 1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). The district court apparently assumed that inter-

ests protected by the first amendment were involved and properly restricted the jury's inquiry to whether the decision not to rehire plaintiffs was based in substantial part on plaintiffs' exercise of protected freedoms. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There was sufficient evidence from which the jury could reasonably find that the terminations were motivated by the plaintiffs' exercise of first amendment rights, and defendants' motions for a directed verdict and for judgment notwithstanding the verdict were properly denied.[3]

### III.

The jury was instructed that if they found for a plaintiff on the issue of liability, they must award such damages as "he or she sustained and is reasonably certain to sustain in the future" as a result. The jury granted damages in the total amount of $7500. Subsequently, the district court ordered plaintiffs' reinstatement, and plaintiffs have indicated their intention to petition the district court for additional equitable relief in the form of back pay. Defendants contend that reinstatement is duplicative and improper relief if the jury award included any compensation for future damages. Moreover, to the extent the sums granted included lost earnings, plaintiffs would not be entitled to an overlapping award of back pay.

---

**3.** Until the 1974–1975 school year, plaintiffs had always received average or above average annual evaluations. Mr. Dopp, despite his less favorable analyses of plaintiffs' performance in 1975, conceded that nothing in his evaluations warranted the nonrenewal vote. At the board meeting on March 30, 1975, Raymond Guthrie, school superintendent during the fall of 1975, recommended reemployment of all of the teachers. The evidence permits an inference that defendant Denver Penberthy came to the March 1975 meeting with preconceived intentions to seek plaintiffs' discharge. Plaintiffs' contracts and that of Mr. Lawson, also active in the salary and MNEA disputes, were the only ones discussed in March. A special board meeting was subsequently called for April 1975 at which the board summarily voted to rehire

all of the other secondary school teachers in the district. Mr. Politte, a school principal who attended the March meeting, testified that the board rehired Mr. Lawson because "the consensus seemed to be that with the firing of the other three that Mr. Lawson would more or less stay in his place and behave." This and other evidence fully supports the jury's verdict as to liability.

Defendants introduced evidence of several incidents primarily involving Ron Greminger's classroom conduct and his relationship with students. Most of the incidents occurred in prior years after which plaintiffs' contracts were renewed. The jury was entitled to consider or to reject this evidence on the issue of motivation.

■ The amounts granted the Gremingers closely approximate the expenses they claimed were incurred in connection with obtaining new employment, and Mr. Burkett's award corresponds to his lost earnings for the school year 1975–1976 and his reemployment expenses. However, rather than speculate as to the basis for the award, we think it best to vacate the monetary judgment and remand this case to the district court for redetermination of the appropriate monetary award[4] for back pay to the date of effective reemployment, subject to standard rules of mitigation, and out of pocket expenses incurred in obtaining interim employment.

■ We assume that the school district will pay any monetary judgment and attorney fees assessed against the individual board members. If the district declines to accept such liability, the board members shall be entitled to petition the trial court for possible indemnity against the school district in light of *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which was decided by the Supreme Court while this action was pending on appeal. Furthermore, in accordance with the rules set forth in *United States v. Cotton Plant School District No. 1*, 479 F.2d 671, 673–74 (8th Cir. 1973); *Langford v. City of Texarkana, Ark.*, 478 F.2d 262, 268 (8th Cir. 1973), and cases cited therein, we affirm the order of the district court directing plaintiffs' reinstatement.

■ The district court granted plaintiffs attorney fees in the amount of $1250. Defendants did not contest the number of hours spent by plaintiffs' counsel or expenses incurred in connection with the lawsuit. The amount, which represents $1.27 above litigation expenses and which was determined without explanation, is grossly inadequate under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. Therefore, we vacate the award of attorney fees and direct that on remand, the district court shall determine an appropriate award of fees in accordance with the standards set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) which have previously been approved by this court.[5] *See, e. g.*, cases cited in *Allen v. Amalgamated Transit Union, Local 788*, 554 F.2d 876, 884 (8th Cir.), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977), and *see Wharton v. Knefel*, 562 F.2d 550, 556–58 (8th Cir. 1977). Plaintiffs may file affidavits and a request for attorney fees and necessary expenses incurred in this court.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. All costs, including attorney fees, shall be paid by the defendants-appellants, cross-appellees, Charles Seaborne, et al.

---

4. Defendants claim that they acted in good faith and are protected from liability for damages by the qualified immunity discussed in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). We disagree. School officials are not entitled to immunity when they violate constitutional rights in "disregard of settled, indisputable law." *Id.* at 321, 95 S.Ct. 992. They are "held to a standard of conduct based not only on permissible intentions, but also on knowledge of * * * basic, unquestioned constitutional rights * * *." *Id.* at 322, 95 S.Ct. at 1001. We find that defendants were chargeable with knowledge of the principle established in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), that teachers may not be dismissed in retaliation for lawful exercise of first amendment freedoms.

5. Unless the number of hours claimed by plaintiffs' attorneys is questioned, the minimum award should not be less than $7500. A separate award shall be made for necessary expenses of litigation.