**Judy T. DAULTON, Appellee,**

v.

**Harley AFFELDT, Paul Apple, Glen Fleeman, Marvin Allen, Edwin Allman, William Schultz, Clyde McSwaim, DeWitt Rhodes, Carroll Thompson, Horacio P. Van Cleve, Selvey Johnson, R. D. Boyer, Thomas Robinson, Eunice Burge, Donald M. Hayes, Ned R. Smith, Grady P. Swisher, Defendants,**

**and**

**Board of Trustees of Forsyth Technical Institute, a public body corporate, Appellant.**

**No. 81–1838.**

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1982.

Decided May 17, 1982.

Robert J. Lawing, Penni L. Pearson, Winston-Salem, N. C. (W. F. Maready, Petree, Stockton, Robinson, Vaughan, Glaze & Maready, Winston-Salem, N. C., on brief), for appellant.

Jim D. Çooley, William G. Pfefferkorn, Winston-Salem, N. C. (Pfefferkorn & Cooley, P. A., Winston-Salem, N. C., on brief), for appellee.

Before HALL and SPROUSE, Circuit Judges, and POTTER,* District Judge.

K. K. HALL, Circuit Judge:

Judy Daulton, a teacher at Forsyth Technical Institute, brought suit pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983 against the school, the Board of Trustees, and other officials, alleging that they had violated her constitutional rights when they refused to offer her a new contract for the 1976–77 school year. A jury found that the plaintiff's first amendment right to free speech had been violated, and the trial judge entered a damages award of

* Honorable Robert D. Potter, United States District Judge for the Western District of North Carolina, sitting by designation.

$11,212 against the college. For reasons more fully outlined below, we agree that the verdict and judgment were proper, and we affirm.

## I.

Daulton was a business and accounting instructor for five years at Forsyth Technical Institute, a North Carolina community college. She was very highly regarded as a teacher by both her students and the administration of the college.

Her downfall began when she divorced her husband and was remarried to a student at the college, all within a matter of days in April, 1975. After that, the administration became increasingly disapproving of her behavior. She was cited for being tardy for class, inaccessible to her students, and overly affectionate with her husband at the school. When she countered that these complaints were unfounded, her resistance was seen as evidence of a negative or hostile attitude. As time went on, the rift widened. Daulton felt harassed and her supervisors labelled her unprofessional and uncooperative.

In January, 1976, Daulton's immediate supervisor, Marvin Allen, sent her a memorandum telling her that in order to keep her job, she would be required to make some changes. These included limiting the amount of time her husband could spend in her office, observing all of the rules and policies of the college and generally displaying a positive and cooperative attitude. Allen noted improvements in Daulton's professional conduct as a result of this memorandum.[1]

Daulton was still outspoken, however. In early February, the teachers were asked to complete a faculty data sheet which requested feedback on the school's strengths and weaknesses. The plaintiff stated,

I have become professionally dismayed with the administration because of their lack of concern for students as displayed by their unwillingness to reschedule classes where students requested additional sections because of large class size. I have also become disheartened with the administration because of their obvious lack of concern for the accounting students as evidenced by changing their curriculum and then not offering courses they needed to graduate . . .

FTI should be responding to the real needs of the people of the community rather than concentrating so heavily on increasing enrollment. The administration of FTI needs to become more aware of and concerned about the low morale of teachers and students on campus and should be more responsive to their needs. They should periodically survey students to find out what the school can do to help them (courses to offer; most convenient hours, curriculum problems they might be having, etc.).

Defendant's Exhibit 30.[2]

During February and March there developed a misunderstanding about the status of the plaintiff's request for maternity leave, and she protested the way it had been handled by her supervisors. Also during that spring, Daulton complained about being assigned to prepare an outline for a course which she was not teaching at the time. Her supervisor responded to her concern, and that matter was dropped.

In his written evaluation of Daulton, Allen stated that the responses on the faculty data sheet and the other disagreements were indicative of "a hostile and uncooperative" attitude, and he recommended that her contract not be renewed. Dean Apple agreed, although when he passed the recommendation along to President Affeldt, he admitted that Daulton's relationship with

---

1. In its brief, appellant contends that the memorandum had no effect. This position is belied by Allen's own statement in the March 30 Faculty Evaluation of Daulton wherein he stated, "Some improvements have been noted in Ms. Daulton's professional conduct since my letter of January 22." Defendant's Exhibit 27.

2. In the faculty data sheet, Daulton also mentioned that she had felt harassed and needed "the cooperation and support of [her] supervisors."

students and her actual performance in the classroom were satisfactory and her only fault was her attitude. President Affeldt approved the recommendation, and the Board of Trustees went along.

The plaintiff sued, claiming that the non-renewal of her contract violated *inter alia* her rights to privacy, due process, and her first and fourteenth amendment rights to free speech. She named President Affeldt, Dean Apple, Marvin Allen, and Glenn Flee-man (Acting Dean of Instruction) as defendants along with the members of the Board of Trustees and the college itself. The jury found that the defendants had violated the plaintiff's right of free speech, but assessed damages only against the college. The college appeals.

## II.

■ Because the plaintiff did not have tenure,[3] the Board of Trustees was free to terminate her employment at the end of any contract year. Nonetheless, Daulton may establish a claim if the decision not to rehire her was based on her exercise of constitutionally protected first amendment freedoms. *Mt. Healthy City Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50

---

3. The North Carolina Community College System has no provision for tenure.

4. The seminal case on the question of whether a public employee's speech is constitutionally protected is *Pickering v. Board of Ed.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering*, the Supreme Court recognized that a public institution, as an employer, has a substantial interest in maintaining discipline and harmony among the ranks of its employees in view of preventing disruption of its operations. On the other hand, a person working for a public school is not thereby stripped of his constitutional rights. Accordingly, the court stated,

> The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* at 568, 88 S.Ct. at 1734.

At the time of the trial in this case, this court had not decided if the underpinnings of the *Pickering* determination were questions of fact for the jury or questions of law for the judge. *Cooper v. Johnson*, 590 F.2d 559 (4th Cir.

L.Ed.2d 471 (1977); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The college contends that the plaintiff did not present evidence at trial sufficient to establish such a claim. Its argument proceeds on three fronts, as follows: (A) Plaintiff's speech was not constitutionally protected; (B) Even if the speech were protected, it was not a substantial or motivating factor in the decision not to renew Daulton's contract; and (C) The school would not have renewed her contract even in the absence of the protected speech. We will address these arguments *seriatim*:

### (A)

According to *Kim v. Coppin State College*, 662 F.2d 1055 (4th Cir. 1981), "the extent of protection afforded by the first amendment to expression is ultimately a question of law for the courts, . . . [t]he jury . . . weigh[s] the factors of disruption of operations, disharmony among coworkers or breach of a confidential working relationship . . . [but], the court must ultimately determine whether the first amendment protects the expression involved." *Id.* at 1062, 1064–65.[4]

---

1979). Of course, we must apply the law as it exists at the time of the decision. *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). However, *Kim* does not alter the result in this case.

The trial judge instructed the jury that it should determine if the speech was directed merely at internal disputes. *See Chitwood v. Feaster*, 468 F.2d 359 (4th Cir. 1972). Thus, in this case, the college had the benefit of an "objective consideration" of its interests, as required by *Kim*.

It makes no difference that the jury was also asked to decide if the speech concerned matters of public interest, although, under *Kim* that is a question to be decided by the court. We hold today that Daulton's speech was protected as a matter of law; the trial judge effectively reached this result when he accepted the jury's verdict. In sum, the outcome of this case would be the same if it were tried today; the allocation of functions conformed to the spirit of *Kim*, and, as a practical matter, to its dictates.

The jury was instructed that "statements which undermine discipline . . . or which indicate an uncooperative or hostile attitude or . . . create disharmony among co-workers . . . or which jeopardize a close working relationship between the employee and the supervisor are not constitutionally protected. . . ." In rendering a verdict for the plaintiff, the jury necessarily found that Daulton's speech did not disrupt the operations of the college.

■ The appellant argues that the plaintiff failed to produce substantial evidence to support the jury's conclusion. Concededly, there was a history of disagreement between the plaintiff and the administration on a variety of subjects, some of which, fairly can be said to be examples of wholly internal disputes. Overall, however, these disputes did not disrupt the college community or create any more disharmony than would be expected when a subordinate criticizes her superiors on any subject.[5] In any event, disharmony is not a *per se* defense to dismissal. *Kim, supra; Williams v. Board of Regents,* 629 F.2d 993, 1004 (5th Cir. 1980) *cert. denied,* 452 U.S. 926, 101 S.Ct. 3063, 69 L.Ed.2d 428 (1981).

■ Furthermore, the importance of protecting Daulton's First Amendment right to speak out on these subjects outweighs the school's interest in regulating the conduct of its employees. On the faculty data sheet Daulton expressed her concerns that the administration of the college was unreceptive to the students' needs and was not responding to the community. Such broadly-based comments are protected as general criticisms of a public institution. *Perry v. Sindermann, supra; Chitwood v. Feaster,* 468 F.2d 359 (4th Cir. 1979). The subject of maternity leave is, like teachers'

salaries and other benefits, properly a matter of public interest. *Hanson v. Hoffman,* 628 F.2d 42 (D.C.Cir.1980); *Greminger v. Seaborne,* 584 F.2d 275 (8th Cir. 1978). Finally, a teacher has the right to voice concerns about matters which affect the education of her students, *Pickering, supra; see Johnson v. Butler,* 433 F.Supp. 531 (W.D. Va.1977), so we cannot condemn Daulton's anxiety about preparing a curriculum outline when she felt ill-equipped to do so. Whatever disruption might have been caused in this case is overshadowed by the public interest in these subjects[6] and Daulton's right to express her opinions on them.

(B)

■ In addition to showing an exercise of protected speech, in order to establish a claim for damages, a plaintiff must prove that the speech was the "substantial or motivating factor" in the decision not to rehire her. *Mt. Healthy, supra.* The judge instructed the jury at least five times that they must be satisfied that the constitutionally protected conduct "was a substantial motivating factor in the decision of the school officials not to continue her employment." Appellant nonetheless argues that the evidence did not support the finding on this issue. We disagree.

■ In his recommendation that Daulton not be rehired, Marvin Allen opined that her statements on the faculty data sheet "indicate an uncooperative attitude and lack of support of the administration and institutional objectives." At trial, Allen admitted on cross examination that he had especially considered the faculty evaluation sheet to be evidence of Daulton's hostility.[7] If Allen considered responses on the faculty data sheet to be "especially" egregious, then the jury could have easily found those

---

**5.** It bears noting that Daulton never made her comments "public" in the ordinary sense of the word, since she communicated her opinions only to the administration at the college. Thus, her speech did not publicly embarrass the administration or create any controversy in the surrounding community.

**6.** We consider only these three incidents for reasons explained in Part C, *infra.*

**7.** This testimony had come out at an earlier hearing. Allen had retreated from this position at trial, but the jury could have considered the earlier statement as a truer measure of his opinion. Indeed, the jury could well have surmised that his retreat was self-serving.

statements to be the substantial and motivating factors in the school's decision.

### (C)

 Beyond the question of causation just discussed, the Supreme Court requires a "but-for" test. In *Mt. Healthy, supra,* the Court stated,

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct. (footnote omitted)

429 U.S. at 287, 97 S.Ct. at 576. *See Mayberry v. Dees, on rehearing,* 663 F.2d 502 (4th Cir. 1981). The trial judge gave impeccable instructions to the jury, quoting the *Mt. Healthy* test verbatim. The appellant is nevertheless dissatisfied, contending that the evidence shows that Daulton would not have been rehired anyway. Again, we disagree.

After Allen sent the January 22 memorandum admonishing Daulton that her job was in jeopardy, he did notice some improvement. Thus, had she done nothing else, the jury could have believed that she would have kept her job. The incidents subsequent to the memorandum all involve protected conduct. (*See* Part A, *supra.*) Since the impact of prior incidents had waned, a logical conclusion is that Judy Daulton lost her job solely because of her exercise of free speech.

### III.

The appellant also reasserts a number of issues which it had presented below. We find the district court's opinion to be dispositive and accordingly, we affirm without further discussion of these matters.

AFFIRMED.