James T. MYSINGER and Francis Lee Kenneth Neeley, Jr., Plaintiffs,

v.

Kenneth "Buck" FOLEY, Individually and in his Official Capacity as Sheriff of Boone County, Arkansas, Defendant.

Civ. No. 86–3014.

United States District Court, W.D. Arkansas, Harrison Division.

Jan. 8, 1987.

Russell C. Atchley, Vowell & Atchley, Berryville, Ark., for plaintiffs.

Donald J. Adams, Adams Law Firm, Harrison, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is another of the public employee dismissal cases reaching this court by reason of the provisions of 42 U.S.C. § 1983. The court has jurisdiction under the provisions of that section and 28 U.S.C. § 1343(3) and (4).

Plaintiff, James T. Mysinger, was a deputy sheriff of Boone County, Arkansas, from February of 1982, until his dismissal by the defendant, Sheriff Kenneth "Buck" Foley, on January 17, 1986.

Plaintiff, Francis Lee Kenneth Neeley, Jr., was a deputy sheriff of Boone County from May of 1978, until his dismissal by Sheriff Foley on January 13, 1986.

Both plaintiffs allege that the manner of their termination violated certain rights guaranteed to them by the United States Constitution and that statements published at the time defamed them. They each seek compensatory damages, including back pay, in the amount of $50,000.00; punitive damages in the amount of $100,000.00; and reinstatement.

**Discussion**

This court has, in the past, expressed its concern about the wisdom of the law repeatedly placing federal courts in the role of substituting the court's judgment for that of elected officials in determining who should be employed by them. See, for example, this court's discussion of that matter in *Karr v. Townsend*, 606 F.Supp. 1121 (W.D.Ark.1985); *Horton v. Taylor*, 585 F.Supp. 224 (W.D.Ark.1984), *rev'd*, 767 F.2d 471 (8th Cir.1985); and *Johnson v. City Council of Green Forest, Arkansas*, 545 F.Supp. 43 (W.D.Ark.1982). In *Horton, supra*, this court expressed its reasons for believing that the better course would be to allow public officials who have been elected by the people to do their job in the public interest more leeway in determining the employees who work for them than is permitted by cases such as *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), particularly in rural counties where the number of employees in a particular office is small. As that opinion indicates, this court believes that, in those situations, whether the people get what they voted for and, in fact, whether the public official gets reelected, is dependent upon how loyal these individuals are and how well they do the job for the public official. After hearing the testimony, the court has little doubt but that the plaintiffs were not supportive of the sheriff, and intended to do their part to see that he was not reelected. In a rural county, with relatively few employees, this attitude is significantly more of a hindrance in doing the job to which the voters elected the sheriff than it would be in a place such as Cook County, Illinois, with 3,000 employees. *Elrod, supra*. It does not seem "fair" to require the sheriff to retain employees who intend to work against him with the desire that either they or someone they support will "beat him" in the coming election.

Unfortunately for that view, only one judge of the panel for the Court of Appeals for the Eighth Circuit which heard the appeal in the *Horton* case agreed with this court's view. *Horton v. Taylor*, 767 F.2d 471 (8th Cir.1985).

There is presently a great deal of discussion throughout the land as to whether the decisions of the United States Supreme Court are "the law of the land," and presumably that argument would also apply to the question of whether opinions of a panel of the court of appeals are binding on the district courts in this circuit in cases other than the one decided by that opinion. However, district courts, being trial courts, and on the "front lines" do not have the time to engage in "professorial" discussions on the intent of the drafters of the Constitution and, in fact, have little incentive to do so. The fact remains that if this court does not follow decisions of the court of appeals, it will be a futile gesture, to say the least. We will simply get to do it again. If one is smart, one does not beat one's head against a brick wall if all one accomplishes in doing so is make his head hurt. Thus, this court

believes that its function is to attempt to determine "what the law is" as announced by the United States Supreme Court and the Court of Appeals for the Eighth Circuit, and to apply the law. Any other course is futile and a waste of time.

**Facts**

The evidence in this case shows that in late 1985 Sheriff Kenneth "Buck" Foley began to hear and to believe that he would have opposition in the primary election to be held in 1986, and that one or both of the plaintiffs had expressed to others an intention to either run against him or to support another candidate. On January 13, 1986, Sheriff Foley called Deputy Neeley to his office and told him that he had heard rumors that Neeley intended to run against him. Although Neeley denied this, Foley said that "the rumors were good enough for him" and that "you are either for me or against me." He asked Neeley whether he wanted to resign or be fired. At that time, Sheriff Foley told Neeley that "Jim" would probably be next and possibly others.

When Neeley refused to resign, Sheriff Foley presented to him the notice introduced as Plaintiffs' Exhibit 1. The notice advised Deputy Neeley that "your employment with the Boone County Sheriff's Department is hereby terminated, effective January 13, 1986." The reasons given for the termination are: "Engaging in partisan political activity while on duty as an employee of the County, or using any County equipment or supplies to engage in partisan political activity." This "reason" appears to be a verbatim quote of subparagraph I of paragraph 8 of the Boone County Personnel Policies and Procedures introduced as Plaintiffs' Exhibit 2.

During questioning by the court, Sheriff Foley candidly admitted that the only reason that he had for terminating Deputy Neeley was that one individual had told him that Neeley had contacted him on two occasions and told him he intended to run and asked for his support. Sheriff Foley admitted that he did not know whether these contacts were during normal working hours, but assumed that they were in view

of the time that he received the telephone calls from the individual reporting the contacts. He says that in addition he heard rumors "around the coffee shop" that Neeley intended to run against him and was seeking support.

On January 17, 1986, he called Deputy James T. Mysinger into his office and notified him that he would also be terminated, effective January 18, 1986. The reasons given in the termination notice (Plaintiffs' Exhibit 3) are:

D. Lying and/or misrepresentation of facts that might affect County performance.

E. Failure to properly perform assigned duties.

I. Engaging in partisan political activity while on duty as an employee of the County.

Again, the "reasons" are verbatim copies of these subparagraphs of paragraph 8 of the Boone County Personnel Policies and Procedures.

During the January 17 conversation that Mysinger had with the Sheriff, he surreptitiously recorded the conversation and a transcript of it was received as Plaintiffs' Exhibit 4. It is obvious from a mere reading of that transcript that, although Sheriff Foley gave additional reasons for the firing, the primary motivating factor was the supposed political activity of Deputy Mysinger. According to the transcript, very early in that conversation at a point when the individuals engaged in the conversation had only discussed unspecified rumors, Sheriff Foley said, "And I don't mind, if you boys want to run that's fine with me." Then, after Mysinger denied that he had announced any intention to run, Sheriff Foley says: "I've never, I've never, no one's come right out and just told me that you said you'd run, I have heard the rumor, in fact, I've heard it on all three of you." Later he says, "You all may beat my hind end and I may not be here over a year, but, and, uh...."

Mysinger is then given the choice of either resigning or getting fired, and he asks

for reasons. At that point in the conversation, Plaintiffs' Exhibit 3 was handed to Deputy Mysinger, and he immediately asked about the allegations that he had engaged in "lying and/or misrepresentation of facts." In response, Sheriff Foley said: "Well, now the lying, don't even think that. But that's the way it reads in the book." When Mysinger asked what duties he had not performed, the Sheriff responded: "Now, your work's fine, Jim, I, I, I don't have no trouble with your work." Later in the conversation, Sheriff Foley says:

> Well, I don't know. I don't know. And I have no idea, I have no way of knowing. All I know is just what I did. If I go ahead and get beat here just this year, well, then I'm gonna get beat on my own. It's not a gonna be that I paid somebody else out here to work for me and then they, they went against me. And I don't think you or anybody else would do that, would you? If you was in my shoes would you do that?

Not surprisingly, and probably not significantly in applying the law as announced in decisions such as *Elrod, supra; Branti, supra;* and *Horton, supra,* Deputy Mysinger seems to agree that he would not have allowed that to happen either, had he been in Sheriff Foley's shoes.

Be that as it may, the court is convinced that one of the motivating factors, and probably the primary motivating factor, in the termination of each of the plaintiffs was their political activity or rumored political activity. Those facts arguably give plaintiffs causes of action under section 1983 for deprivation of constitutional rights which the courts have said public employees, by the very nature of their public employment, have. At least, arguably, according to the cases, plaintiffs may have a cause of action for deprivation of a property right without due process of law; deprivation of a liberty interest without due process of law; and deprivation of their right not to be terminated for exercising the right to freedom of speech (political activity).

**Property Right**

 Unless the county personnel policies and procedures to be discussed below provide plaintiffs with a property interest, it is clear that their employment was terminable "at will" under Arkansas law. *M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980); *Miller v. Missouri Pacific Transportation Co.,* 225 Ark. 475, 283 S.W.2d 158 (1955). Plaintiffs' employment was not under tenure or contract, nor was there any clearly implied promise of continued employment unless the personnel policies accomplish this. Thus, at least absent the personnel policies, plaintiffs had no legitimate claim of entitlement to employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

However, some of these same cases hold that if a public employee has a contractual right to his employment or a legally enforceable expectancy of continued employment, he has a property interest in his employment and he may not be deprived of that property interest without a due process hearing. *Board of Regents v. Roth, supra.*

The court has reviewed the personnel policies and procedures in force in Boone County at the time of the terminations, and is, frankly, unsure about whether they grant to plaintiffs a property interest in their employment. In fact, the court is not now at all sure that it knows what the law is in this respect in this circuit. *Compare Hogue v. Clinton,* 791 F.2d 1318 (8th Cir. 1986), and the recent case of *Skeets v. Johnson, et al,* 805 F.2d 767 (8th Cir.1986); cases decided by different panels of the court of appeals which appear to reach nearly if not completely opposite results. In any event, it is not clear whether the personnel policies in effect were intended to grant the employees of the county an expectancy of continued employment. Pertinent portions of paragraph 8 of those policies say:

An employee may be suspended or dismissed for any of the following causes:

A. Repeated absences without a reasonable excuse as determined by the elected official; failure to return promptly to work from an authorized leave without a reasonable excuse.

B. Any form of dishonesty as deemed punishable by a court of law of record.

C. Falsification or omission of information given in completing a job application form.

D. Lying and/or misrepresentation of facts that might affect County performance.

E. Failure to properly perform assigned duties, or a violation of any lawful regulation or order.

F. Drunkenness, drinking on duty or other conduct prejudicial to good order and discipline.

G. Accepting from any person for personal use, any fee, gift, or other valuable thing in the course of an employee's work or in connection with it, when such gift or valuable thing is given in the hope or expectation or receiving a favor or better treatment than is accorded other persons.

H. Accepting and engaging in work at a job outside of County employment which conflicts with an employee's duties as a County employee.

I. Engaging in partisan political activity while on duty as an employee of the County, or using any County equipment or supplies to engage in partisan political activity.

The court is not certain whether the nine reasons listed are the only grounds for terminating a Boone County employee. If these are the only grounds, they would not seem to cover a number of reasons that might be believed by most citizens to be sufficient grounds for termination of a public employee. For example, it is not clear that someone convicted of murder or rape could be terminated, at least if the murderer or rapist was not dishonest. A murderer or rapist would not necessarily be repeatedly absent from his job, thus subparagraph A would not apply. If he was honest, subparagraphs B, C and D would not appear to apply. If he properly performed his assigned duties and was not a drunk, the murderer or rapist would not be subject to dismissal under subparagraphs E and F, and if he did not accept gifts for his personal use or accept outside work which conflicted with his county duties, subparagraphs G and H would not apply. Of course, if he engaged in the dastardly deed of engaging in partisan politics, at least while on duty, then he is subject to dismissal under subparagraph I.

Surely the drafters of the Boone County Personnel Policies and Procedures did not intend this result, yet there are no provisions in the policies which seem to give the county officials any right to terminate an employee unless he engages in one of the nine acts specifically set forth. The policies and procedures say that an employee "may be suspended or dismissed for any of the following causes" so, at least by inference, they cannot be dismissed or suspended for any other causes. Surely that was not intended, but an employee can certainly argue, as plaintiffs do, that that is the result and that, thus, they have a property interest in their employment and that they cannot be deprived of that property interest without a proper due process hearing.

The court does not believe that it is necessary for it to venture further into that thorny thicket because the court is convinced that one of the motivating factors for the dismissal of the plaintiffs was their political activities. The remedy for that violation of plaintiffs' civil rights is nearly identical (damages, back pay, and reinstatement) as those afforded parties where a property right has been violated.

**Political Activities**

In the cases of *Elrod v. Burns, supra,* and *Branti v. Finkel, supra,* the United States Supreme Court held that a public employee has a First Amendment right to engage in political activities such as supporting the opponent of the official they work for, or refraining from supporting their "boss," and that a termination be-

cause of such activity gives the terminated employee a cause of action. As already indicated, the court is not at all certain that things were not better in the "good ole days" when public officials ran on a platform of sweeping clean and starting anew. In many cases at least, the voters wanted that and voted for it. Be that as it may, the court is convinced that the law, in its present state, does not support such a position. *Horton v. Taylor, supra.* In fact, *Elrod v. Burns, supra,* is exactly on point since it involves the firing of deputy sheriffs in Cook County (Chicago) for political activities. The Supreme Court says you cannot do that.

■ Instead, the law is that Sheriff Foley, when he terminated the plaintiffs because of their political activities, violated their First Amendment rights. At the trial, the Sheriff seemed to take solace in the fact that he did nothing more, he believed, than do what was specifically authorized by subparagraph I of paragraph 8 of the Boone County Personnel Policies and Procedures. However, all that he had in this case in relation to the political activities of the plaintiffs was contact from one individual that one of the plaintiffs had advised him that he intended to run and asked him for his support, and rumors in the coffee shop. If subparagraph I of the Boone County Personnel Policies and Procedures allow termination for that activity, such provision would not pass constitutional muster. This is not a case in which the plaintiffs were using county patrol vehicles to go up and down the road campaigning; instead, at most, one of them told one individual on two occasions that he intended to run and asked for support, and the other was guilty of nothing more than being the subject of rumors. Clearly, under *Elrod, supra, Branti, supra,* and *Horton, supra,* plaintiffs' constitutional rights were violated.

■ That leaves the question of the remedies to be afforded them for such violation. In the case of a constitutional violation, the proper remedy appears to be reinstatement and back pay. *Skeets, supra;*

*United States v. Cotton Plant School District No. 1,* 479 F.2d 671 (8th Cir.1983); *Greminger v. Seaborne,* 584 F.2d 275 (8th Cir.1978); *Langford v. City of Texarkana, Ark.,* 478 F.2d 262 (8th Cir.1973). The court believes that it has no choice but to order that the plaintiffs be reinstated to the job that they had at the time of their termination, or to a similar position.

In addition, the court has no choice but to order Boone County to pay to the plaintiffs the wages that they lost as a result of the termination, reduced by the amount of the wages that they earned elsewhere during that period. The evidence in this respect shows that Deputy Neeley was paid an annual salary of $13,731.24, and that he earned in other jobs the sum of $4,647.00. Thus, he is entitled to back pay at his rate when terminated, decreased by the sum of $4,647.00.

Deputy Mysinger earned, at the time of his employment, an annual salary of $12,-200.00, and he earned from self-employment after his termination, according to his testimony which was not refuted, a net of $444.00.

**Liberty Interest**

Both plaintiffs contend that they were discharged under circumstances which created a stigma which foreclosed their freedom and ability to seek other employment. In *Board of Regents v. Roth, supra,* the Supreme Court held that where the employer publicly disseminates a charge against the employee which might seriously damage his standing and association in the community, a protected liberty interest may be triggered. *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707.

■ However, it is well settled that mere termination of an employee from governmental employment is not a deprivation of a protected liberty interest. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth, supra; Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The evidence in the case indicates that, upon request of the news media, Sheriff Foley read to the inquiring news media representatives the termination notices which were supplied to the plaintiffs. That probably constitutes sufficient publication of the stigmatizing reasons, if any, to support a liberty interest violation.

■ In the notice delivered to Deputy Neeley, and provided to the news media, Neeley was accused by Sheriff Foley only of engaging in partisan political activity. The court does not believe that is stigmatizing in the view of most individuals in Boone County, Arkansas, and surrounding territory, in spite of the fact that Deputy Neeley's wife, Debbie Neeley, testified that those accusations had caused her and her family problems because some people in the area did not know what "partisan political activity" meant, and thought that it had something to do with activity with a group from that area which had gained certain notoriety in the area and in the state known as the "Covenant, Sword, and Arm of the Lord (CSA)." In the court's view, however, an accusation that someone has engaged in partisan political activity is not stigmatizing and does not deprive the accused individual of a liberty interest.

■ The notice delivered to Deputy Mysinger and the news media in relation to his termination is a different matter. In that notice, Deputy Mysinger is accused of "lying and/or misrepresentation of facts." That is stigmatizing and, since the evidence shows that the stigmatizing reasons were made public by defendant Foley, plaintiff Mysinger has established a violation of a liberty interest. *Hogue v. Clinton*, 791 F.2d at 1322.

■ For the reasons set forth above, the court has already ruled that Mysinger is entitled to reinstatement and back pay, but the court does not believe that that grants to him all of the rights which the law affords him where stigmatizing reasons for his dismissal are given and published. According to the cases, he had a liberty interest violated in that his good name may have been harmed. Thus, he is entitled to a name-clearing hearing at which he has an opportunity to refute the stigmatizing charges made, and the defendant will be required to provide him with such a name-clearing hearing within a reasonable time. As required by *Wellner v. Minnesota State Junior College Board*, 487 F.2d 153 (8th Cir.1973), Deputy Mysinger will be considered to be an employee of the Sheriff's department for salary and fringe benefit purposes at least, until such name-clearing hearing is afforded him.

**Defamation**

■ Both plaintiffs allege that they were defamed by Sheriff Foley. The court does not believe that it would serve a useful purpose to delve into this issue to any length. Suffice it to say that there is absolutely no basis for Deputy Neeley to believe that he was defamed, for the same reasons set forth in relation to his liberty interest claim. As to Deputy Mysinger, all that Sheriff Foley did was, upon request, relate to the news media the reasons he gave for terminating Mysinger. Sheriff Foley "having substantial responsibility for or control over the conduct of government affairs at least where law enforcement or police functions are concerned," is a public official. *St. Amant v. Thompson*, 390 U.S. 727, 730 n. 2, 88 S.Ct. 1323, 1325 n. 2, 20 L.Ed.2d 262 (1968); *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). The evidence falls short of showing that Sheriff Foley's conduct was reckless or conducted with actual malice. *St. Amant, supra*, and *Gallman v. Carnes*, 254 Ark. 987, 497 S.W.2d 47 (1973). Deputy Mysinger is not entitled to damages for defamation.

**Conclusion**

For the reasons set forth above, a judgment will be entered in compliance with this memorandum opinion.