70 F.3d 1261
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Margaret DABBS, Plaintiff-Appellee,
v.
Kaye AMOS, individually and in her capacity as Chairman of
the Cabarrus County Board of Education, Defendant-Appellant,
and
CABARRUS COUNTY BOARD OF EDUCATION; Daniel Freeman,
individually and in his official capacity as Superintendent
of the Cabarrus County School Administrative Unit; Betty B.
Alston, in her official capacity as a member of the Cabarrus
County Board of Education; Phyllis Galloway, in her
official capacity as a member of the Cabarrus County Board
of Education; Harold Hartsell, Sr., in his official
capacity as a member of the Cabarrus County Board of
Education; L. Don Hoyle, in his official capacity as a
member of the Cabarrus County Board of Education; Dorothy
L. Simmons, in her official capacity as a member of the
Cabarrus County Board of Education; Lewis M. Williams, in
his official capacity as a member of the Cabarrus County
Board of Education, Defendants.
Margaret DABBS, Plaintiff-Appellee,
v.
Daniel FREEMAN, individually and in his official capacity as
Superintendent of the Cabarrus County School
Administrative Unit, Defendant-Appellant,
and
CABARRUS COUNTY BOARD OF EDUCATION; Kaye Amos, individually
and in her capacity as Chairman of the Cabarrus County Board
of Education; Betty B. Alston, in her official capacity as
a member of the Cabarrus County Board of Education; Phyllis
Galloway, in her official capacity as a member of the
Cabarrus County Board of Education; Harold Hartsell, Sr.,
in his official capacity as a member of the Cabarrus County
Board of Education; L. Don Hoyle, in his official capacity
as a member of the Cabarrus County Board of Education;
Dorothy L. Simmons, in her official capacity as a member of
the Cabarrus County Board of Education; Lewis M. Williams,
in his official capacity as a member of the Cabarrus County
Board of Education, Defendants.
Margaret DABBS, Plaintiff-Appellant,
v.
CABARRUS COUNTY BOARD OF EDUCATION, Defendant-Appellee,
and
Daniel FREEMAN, individually and in his official capacity as
Superintendent of the Cabarrus County School Administrative
Unit; Kaye Amos, individually and in her capacity as
Chairman of The Cabarrus County Board of Education; Phyllis
Galloway, in her official capacity as a member of the
Cabarrus County Board of Education; Harold Hartsell, Sr.,
in his official capacity as a member of the Cabarrus County
Board of Education; l. Don Hoyle, in his official capacity
as a member of the Cabarrus County Board of Education;
Dorothy L. Simmons, in her official capacity as a member of
the Cabarrus County Board of Education; Lewis M. Williams,
in his official capacity as a member of the Cabarrus County
Board of Education, Defendants.
 Nos. 94-2267, 94-2268, 95-1080.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 28, 1995.
Decided Nov. 21, 1995.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Salisbury. William L. Osteen, Sr., District Judge. (CA-92-583-4)
 ARGUED: John Robbins Wester, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina; Jim D. Cooley, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, North Carolina, for Appellants. Thomas Milton Stern, FERGUSON, STEIN, WALLAS, ADKINS, GRESHAM & SUMTER, P.A., Chapel Hill, North Carolina, for Appellee. ON BRIEF: Edward F. Hennessey, IV,
 ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina; Fredrick G. Johnson, Hugh B. Campbell, III, FAW, FOLGER, JOHNSON & BELL, Dobson, North Carolina; Mark P. Henriques, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, North Carolina, for Appellants. Ann Hubbard, FERGUSON, STEIN, WALLAS, ADKINS, GRESHAM & SUMTER, P.A., Chapel Hill, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND DISMISSED.
 Before WIDENER, HALL, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this suit, Margaret Dabbs, a public school employee, alleges that the Cabarrus County Board of Education, its chairman, Kaye Amos, and its superintendent, Daniel Freeman, violated 42 U.S.C. Sec. 1983 and the First Amendment of the United States Constitution by demoting her because of her political speech. In a well-reasoned opinion, the district court held with regard to this claim that: (1) none of the defendants enjoyed legislative immunity; (2) the Board was entitled to summary judgment because Dabbs failed to show that she had been injured by a Board "policy" or "custom"; and (3) the individual defendants were not shielded by qualified immunity and therefore not entitled to summary judgment. Dabbs v. Cabarrus County Board of Education, No. 4:92CV00583 (M.D.N.C. Sept. 23, 1994).
 
 
 2
 The complicated underlying facts as well as the district court's rationale for its conclusions are fully set forth in the district court's opinion. After a thorough consideration of the entire record, including the parties' briefs and oral arguments, we affirm the first two holdings--as to legislative immunity[1] and the Board's entitlement to summary judgment--on the basis of the district court's opinion. How ever, for the reasons set forth within, we believe the individual defendants were entitled to qualified immunity, and thus summary judgment also should have been granted to them on the Sec. 1983 claim.
 
 
 3
 Pursuant to the doctrine of qualified immunity, public officials are shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citing Procunier v. Navarette, 434 U.S. 555, 565 (1978); Wood v. Strickland, 420 U.S. 308, 322 (1975)). Hence, at the outset we must determine "whether the plaintiff has alleged a violation of law that was clearly established at the time the challenged actions were taken." DiMeglio v. Haines, 45 F.3d 790, 794 (4th Cir.1995); see also Harlow, 457 U.S. at 818. This is "a purely legal question." Siegert v. Gilley, 500 U.S. 226, 232 (1991). "When determining this legal question a court must identify the 'specific right allegedly violated,' and then decide if at the time of the alleged violation the right was clearly established." Buonocore v. Harris, 65 F.3d 347, 353 (4th Cir.1995) (quoting Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992)).
 
 
 4
 Dabbs alleges that, while serving as Community-Schools Coordinator for Cabarrus County, she had a clearly established First Amendment right to campaign for an incumbent school board member in an unsuccessful re-election bid, and to sign a petition and attend a Board meeting on behalf of the incumbent school superintendent who was involved in a salary dispute with the Board. Dabbs further alleges that the defendants demoted her from her position as Community-Schools Coordinator to a position as a garage parts clerk because she exercised those rights. In a job description Dabbs wrote prior to this litigation and during her deposition in this case, Dabbs conceded that, as Community-Schools Coordinator, (1) although not the final policymaker, she had policymaking authority with regard to the community-school relations, use of school facilities by the community, and the after school child care program; (2) she reported directly to the Superintendent of Schools, meeting with him weekly, and working with him on sensitive and confidential matters including a measles epidemic and criminal charges against a teacher; and (3) she had "public relations responsibilities," serving as a "communication link" and "public information officer" between "the schools and any private or public groups." See Joint Appendix at 41, 47, 166-67, 600-01. North Carolina law confirmed that community-school coordinators were imbued with broad discretionary authority and that the above duties were consistent with that authority. See N.C. Gen.Stat. Sec. 115C-209 (1990). Thus the question before us is whether it was clearly established, in 1992 when Dabbs was demoted, that the Constitution forbade the demotion of a public employee with Dabbs' job description because of that employee's political speech.
 
 
 5
 It is undoubtedly clearly established, as Dabbs asserts, that a public employee may not be discharged for speaking as a citizen upon matters of public concern unless that speech interferes with the employer's interest in promoting the efficiency of the public services it performs. See Connick v. Myers, 461 U.S. 138, 142 (1983); see also Pickering v. Board of Educ., 391 U.S. 563 (1968). It is also well-settled that speech concerning a school board's allocation of funds, local elections, or employment decisions about high-level school system personnel clearly constitute matters of public concern. See, e.g., Pickering, 391 U.S. at 571-72; Mills v. Alabama, 384 U.S. 214, 218-19 (1966); Piver v. Pender County Bd. of Educ., 835 F.2d 1076, 1080 (4th Cir.1987). Accordingly, we apply the Connick/Pickering test: balancing Dabbs' right to speak on matters of public concern against the possibility that her speech will interfere with the efficient performance of her public duties. In so doing, we "must give weight to the nature of the employee's job in assessing the possible effect of [her] action." Jurgensen v. Fairfax County, 745 F.2d 868, 880 (4th Cir.1984).
 
 
 6
 Dabbs has not cited a single case in which any court has held that a public employee with responsibilities akin to hers has a First Amendment right to challenge the composition and policy decisions of her employing board or agency. The cases on which Dabbs relies involve employees with no similar policymaking, confidential, or public relations responsibilities. See, e.g., Perry v. Sinderman, 408 U.S. 593 (1972) (instructor at junior college); Pickering, 391 U.S. 563 (school teacher); Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183 (4th Cir.1994) (same); Laidley v. McClain, 914 F.2d 1386 (10th Cir.1990) ("low-level" employees of district attorney's office); Piver, 835 F.2d 1076 (school teacher); Daulton v. Affeldt, 678 F.2d 487, 491 (4th Cir.1982) (community college instructor).
 
 
 7
 Conversely, although there is no case holding that a plaintiff in Dabbs' precise circumstances cannot recover, there is substantial authority suggesting that such a plaintiff may have no claim. In 1987, the Supreme Court so implied in Rankin v. McPherson, 483 U.S. 378, 390 (1987) (dicta). There a police constable fired a clerical employee because in learning of an assassination attempt on the President, she told a fellow employee in a private conversation, "If they go for him again, I hope they get him." Id. at 380. This speech concededly involved a matter of public concern and there was "no evidence that it interfered with the efficient functioning of the office" or, since the speech was private, that it even discredited the constable. Id. at 389. Nonetheless, the constable asserted that he was entitled to discharge the clerk because "she was not a suitable employee to have in a law enforcement agency." Id. at 390. The Supreme Court rejected this argument and held that the discharge violated the First Amendment, in part because the clerk had "no confidential, policymaking, or public contact role." Id. at 390-91. However, the Court suggested in words that resound here that if the employee had had such responsibilities, the result might well have been different:
 
 
 8
 [I]n weighing the State's interest in discharging an employee based on any claim that the content of a statement made by the employee somehow undermines the mission of the public employer, some attention must be paid to the responsibilities of the employee within the agency. The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails. Where, as here, an employee serves no confidential, policymaking, or public contact role, the danger to the agency's successful functioning from that employee's private speech is minimal.
 
 
 9
 Id.
 
 
 10
 Relying on Rankin, the Eleventh Circuit reversed a district court's refusal to grant public officials qualified immunity in Sims v. Metropolitan Dade County, 972 F.2d 1230 (11th Cir.1992). The defendant officials were supervisors with the Dade County Department of Community Affairs, which was created "to foster mutual understanding and tolerance among all of Miami's ethnic groups"; the plaintiff was a Department employee whose role was "to move through the community to build rapport, to ease mounting pressures before they erupt into violence and to provide access to the County government." Id. at 1231, 1238. During his off hours, while serving as pastor of a Baptist church, the plaintiff, "from the pulpit," encouraged his congregation to boycott local businesses stating: "[s]ometimes we are made to feel like foreigners in our own homeland because of the way Spanish is spoken in many of our public facilities and businesses." Id. at 1232. Because of these words, the defendant officials suspended the employee; he sued, asserting that this suspension violated his First Amendment rights. Although the officials "failed to demonstrate that [the employee's] speech adversely affected" the "efficiency of the public services their offices perform," id. at 1246 (Hatchett, J., dissenting), the Eleventh Circuit held they were entitled to qualified immunity, explaining:
 
 
 11
 the particular nature of Sims' job, the mission of the Department, and the inconsistency therewith of Sims' statements ... place Sims' complaint beyond the protective scope of the First Amendment.
 
 
 12
 Id. at 1238. See also Bates v. Hunt, 3 F.3d 374, 378 (11th Cir.1993) (a confidential or policymaking employee, or one whose job requires extensive public contact on employer's behalf, "does not have much protection under the First Amendment when he speaks or acts in a hostile way toward his employer").
 
 
 13
 Other circuits have reached similar conclusions, albeit via different reasoning. See Warzon v. Drew, 60 F.3d 1234, 1239 (7th Cir.1995)("if [plaintiff] was a confidential or policymaking employee, her superiors could fire her for advocating positions in conflict with their stated policies"); Wilber v. Mahan, 3 F.3d 214, 218 (7th Cir.1993) ("Once the employee is classified as confidential or policymaking he can be fired on political grounds even if there is no evidence that he would not serve his political supervisors loyally and competently"); Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988, 996 (5th Cir.1992) (en banc) (because plaintiff's position was "so high-level and confidential," not much evidence was necessary to demonstrate disruption in the workplace); Rodriguez Rodriguez v. Munoz Munoz, 808 F.2d 138, 145 (1st Cir.1986) ("[T]he same category of employees who, under Elrod-Branti, are properly open to discharge because of their political affiliation are likewise open to discharge because of political activities they may engage in") (emphasis in original).[2] See also Kuluczby v. City of White Plains, 57 F.3d 202, 210 (2d Cir.1995); Lawrence Tribe, American Constitutional Law, Sec. 12-26 at 1018 (2d ed.1988) ("persons who hate children and speak ill of them--something the First Amendment protects even if without great enthusiasm--have no right to work for a public day care center").
 
 
 14
 All of these cases are distinguishable from the one at hand, in that it is unclear here that the political speech of the employee was contrary to the mission of her public employer. Moreover, although an employer need only show the employee's speech threatened to interfere with government operations, Waters v. Churchill, 511 U.S. ---, 114 S.Ct. 1878, 1887, 1891 (1994) (plurality opinion), seemingly unnoticed in the above authority is the explicit directive in Rankin that if speech involves a matter of public concern, then the employer "bears the burden" of justifying the adverse personnel action. Rankin, 483 U.S. at 388. Accord United States v. National Treasury Employees Union, --- U.S. ---, ---, 115 S.Ct. 1003, 1013 (1995). Furthermore, three of the above cases prompted vigorous well-reasoned dissents, see Kinsey, 950 F.2d at 999; Sims, 972 F.2d at 1238; Rodriguez Rodriguez, 808 F.2d at 147; and in several of them the employees suffered far less grievous consequences than Dabbs. See Kuluczby, 57 F.3d at 206 (reduction in duties but retention of position and a 2.54% pay raise); Wilber, 3 F.3d at 215 (suspension without pay); Sims, 972 F.2d at 1232 (three day suspension); Kinsey, 950 F.2d at 991 (suspension with full pay).
 
 
 15
 Accordingly, we express no opinion as to whether or not the Constitution permits the demotion or firing of all public employees with policymaking, confidential, or public relations duties whenever they engage in political speech that may be at odds with the mission or policy of the public agency by whom they are employed. Nonetheless, in light of the above authority we cannot conclude that in this particular case, after Dabbs campaigned for a certain Board member and publicly supported the Superintendent in a dispute with the Board, she had a clearly established right to retain a position that she conceded involved policymaking, confidential, and public relations responsibilities. Consequently, the defendants are entitled to qualified immunity and should have been granted summary judgment on the First Amendment claim. That portion of the district court's decision and order holding to the contrary is reversed and the case is remanded for entry of an appropriate order.[3]
 
 
 16
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND DISMISSED IN PART.
 
 
 
 [1]
 Our opinion in Berkley v. Common Council of Charleston, 63 F.3d 295 (4th Cir.1995) (en banc), had not been issued at the time the district court decided this case. However, the district court's analysis of the legislative immunity question is entirely consistent with Berkley 's holding that "a municipality does not enjoy immunity with respect to the acts of its legislative body." Id. at 300
 
 
 [2]
 These cases rely in part on Elrod v. Burns, 427 U.S. 347, 368-369 (1976) (plurality opinion), and Branti v. Finkel, 445 U.S. 507, 517-18 (1980), which hold that government officials cannot base personnel decisions on party affiliation unless the affected employee is one with confidential or policymaking responsibilities. In Jones v. Dodson, 727 F.2d 1329, 1334-35 n. 6 (4th Cir.1984), we indicated that the Elrod-Branti doctrine was limited to cases in which personnel action is taken against an employee because she belongs to a different political party than the employer. We expressly rejected the extension of the Elrod-Branti doctrine to the "personal political loyalty" situation. Id. Dabbs does not allege that she was demoted because of her party affiliation and there is no evidence that she was; thus, we do not rely on the Elrod-Branti doctrine here. However, we do note that in Rankin, which was decided three years after Jones, the Supreme Court borrowed the language of the Elrod-Branti exception in analyzing the constitutionality of a suspension under Pickering and Connick
 
 
 [3]
 Dabbs has also asserted various state law claims growing out of her demotion. The district court granted the Board and Amos summary judgment on all grounds, and granted Freeman summary judgment on all grounds except a slander claim. We affirm all of these rulings on the basis of the district court's opinion, except that concerning the slander claim against Freeman. We decline to exercise any jurisdiction as to the slander claim, see Swint v. Chambers County Comm'n, --- U.S. ---, 115 S.Ct. 1203 (1995), and so dismiss the appeal as to it